# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ALTSHARES EVENT-DRIVEN ETF and THE ARBITRAGE FUND, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | CLASS ACTION |
| vs. | JURY TRIAL DEMANDED |
| ENGAGESMART, INC., ROBERT P. BENNETT, DEBORAH A. DUNNAM, MATTHEW G. HAMILTON, CASSANDRA HUDSON, DAVID MANGUM, PRESTON MCKENZIE, RAPH OSNOSS, DIEGO RODRIGUEZ, PAUL G. STAMAS, SCOTT SEMEL, GENERAL ATLANTIC, L.P. and VISTA EQUITY PARTNERS MANAGEMENT, LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF PROXY AND ANTI-FRAUD PROVISIONS OF THE FEDERAL SECURITIES LAWS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 2

JURISDICTION AND VENUE ......................................................................................... 9

PARTIES ........................................................................................................................... 9

    A.    Plaintiffs ......................................................................................................... 9

    B.    Defendants ..................................................................................................... 10

        1.    Defendant EngageSmart ................................................................... 10

        2.    The Special Committee Defendants ................................................ 10

        3.    The Board Defendants ...................................................................... 11

        4.    The Officer Defendants .................................................................... 13

        5.    Defendant General Atlantic ............................................................. 13

        6.    Defendant Vista ............................................................................... 14

I.    FACTUAL BACKGROUND .................................................................................. 15

    A.    General Atlantic's Ownership and Governance Rights Over EngageSmart ........ 15

    B.    General Atlantic Explores a Strategic Transaction with Vista Only Six Months After the IPO ................................................................................. 18

    C.    General Atlantic and EngageSmart Renew Their Pursuit of a Transaction with Vista Amidst Unsolicited Interest from Other Parties ................................. 21

    D.    General Atlantic Works with Its Financial and Legal Advisors on a Non-Control Transaction Acceptable and Beneficial to General Atlantic .................. 22

    E.    The EngageSmart Board Reconstitutes the Conflicted Special Committee ........ 23

    F.    Defendant Hamilton Retains Conflicted Evercore on Behalf of the Special Committee ................................................................................................ 25

    G.    The Special Committee Approves EngageSmart's Retention of Conflicted Financial Advisors ..................................................................................... 26

    H.    The Special Committee "Approves" the Script and Buyer List that Severely Limits the Potential Bidders ........................................................................ 27

    I.    Defendant Bennett Contacts Vista Outside the Solicitation Process ................... 29

J.      The Solicitation Process Proceeds Targeting a Minority Investment Preferred by General Atlantic .................................................. 29

K.     General Atlantic Focuses in on Vista .................................................. 31

L.     Vista Submits a Bid and Demands a Quick Timeline to Announce the Merger .................................................................................................. 33

M.    Vista Demands Change-of-Control and General Atlantic and the Special Committee Capitulate ............................................................... 34

N.     The Deficient Go-Shop Proves Unsuccessful ...................................... 37

II.     SHAREHOLDERS VOTE TO APPROVE THE MERGER ............................................. 38

III.   DEFENDANTS' VIOLATIONS OF THE EXCHANGE ACT ....................................... 39

A.     False or Misleading Statements or Omissions of Material Facts in the October 2023 Merger Press Release ...................................................... 39

B.     False or Misleading Statements or Omissions of Material Facts in the November 2023 Go-Shop Press Release ................................................ 41

C.     False or Misleading Statements or Omissions of Material Facts in the December 19, 2023 Definitive Proxy .................................................... 42

       1.     False and Misleading Statements or Omissions of Material Facts Concerning the Special Committee's Recommendation ...................................... 43

       2.     False and Misleading Statements or Omissions of Material Facts Concerning the EngageSmart Board's Recommendation..................................... 45

       3.     False and Misleading Statements or Omissions of Material Facts Concerning the Position of General Atlantic and Vista ......................................... 46

D.     False or Misleading Statements or Omissions of Material Facts in the December 12, 2023 Schedule 13E-3 by EngageSmart, General Atlantic and Vista ............................................................................................... 48

IV.   ALLEGATIONS OF SCIENTER ....................................................................................... 49

V.    LOSS CAUSATION ............................................................................................................ 50

VI.   INAPPLICABILITY OF STATUTORY SAFE HARBOR .............................................. 51

VII.  CLASS ACTION ALLEGATIONS .................................................................................... 52

VIII. PRESUMPTION OF RELIANCE ...................................................................................... 53

COUNT I Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder ........................................................................ 54

COUNT II Against the EngageSmart Defendants for Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder ................................................. 56

COUNT III Against the The Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic for Violations of Section 20(a) of the Exchange Act .................................................................................................................................. 58

IX.     PRAYER FOR RELIEF .................................................................................................. 59

X.      JURY DEMAND ............................................................................................................. 60

Plaintiffs AltShares Event-Driven ETF and The Arbitrage Fund (together, "Plaintiffs") bring this class action (the "Class Action") for violations of:

(i)     Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 promulgated thereunder, on behalf of themselves and other public holders of EngageSmart, Inc. ("EngageSmart" or the "Company") common stock (the "Unaffiliated Stockholders") as of the December 21, 2023 record date (the "Record Date") who were entitled to vote on the "take-private" acquisition (the "Merger") of the Company by Vista Equity Partners Management, LLC and its affiliates (collectively, "Vista"); and

(ii)    Sections 10(b) and 20(a) of the Exchange Act, §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, on behalf of themselves and all other persons or entities (excluding Defendants, defined more fully below) who sold shares of EngageSmart common stock from October 23, 2023, the announcement date of the Merger, through the close of the Merger on January 26, 2024 (the "Class Period"), including those who sold into the Merger and were damaged thereby (together with the Unaffiliated Stockholders, the "Class" or "Class Members").

These claims are variously asserted against: (i) EngageSmart; (ii) the Company's board of directors (the "EngageSmart Board" or "Board Defendants"); (iii) the special committee purportedly established to evaluate the Merger (the "Special Committee" or "Special Committee Defendants"); (iv) certain Company executives (the "Officers" or "Officer Defendants" and, together, with EngageSmart, the Board Defendants and Special Committee Defendants, the "EngageSmart Defendants"); (v) General Atlantic, L.P. and its affiliates ("General Atlantic"), EngageSmart's former controlling shareholder and current 35% post-Merger owner of EngageSmart; and (vi) Vista, 65% post-Merger owner of EngageSmart (all together, the "Defendants").

Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based upon the ongoing investigation by undersigned counsel, including review and analysis of: (i) public filings by EngageSmart, General Atlantic and Vista; (ii) press releases and other public statements; (iii) media and analyst

reports about the Company; and (iv) publicly filed pleadings in other proceedings, including the actions for breach of fiduciary brought by shareholders in the Delaware Court of Chancery.

## **INTRODUCTION**

1. This is a securities class action arising from a pattern of material misstatements and omissions of material facts that concealed the hopelessly conflicted and tainted sales process that led to EngageSmart's January 2024 take-private Merger with Vista, which was motivated not by what was best for Unaffiliated Stockholders but by controlling shareholder General Atlantic's desire to monetize part of its five-year investment in EngageSmart while maintaining its control position or, at the very least, to roll over some of its equity to maintain an upside benefit in the Company going forward, in violation of an "equal treatment" provision in the Company charter.

2. Among other things, in order to convince Unaffiliated Stockholders to vote in favor of the Merger, on December 19, 2023, Defendants either filed, caused to be filed and/or made representations in the *Definitive Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934* for the Merger (the "Proxy") on a Schedule 14A with the U.S. Securities and Exchange Commission (the "SEC"), which stated that the Merger was "advisable, fair to, and in the best interests of EngageSmart and the Unaffiliated Stockholders" and represented "the best value that EngageSmart could reasonably obtain from Vista for the shares of EngageSmart Common Stock."

3. In truth, however, the Merger was driven by and dominated by controlling shareholder General Atlantic and assisted by conflicted financial and legal advisors retained by the Special Committee and Board. These conflicts wholly tainted the merger process and underscored the need for complete transparency in the Proxy to allow EngageSmart's Unaffiliated Stockholders to adequately test whether the Merger maximized value, or whether Unaffiliated Stockholders

were better off voting against the Merger and retaining their shares in the stand-alone Company and/or waiting for a better deal.

4.　　Defendants' material misstatements and omissions of material facts that concealed the hopelessly conflicted and unfair sales process and prevented Class Members from making an informed vote on the Merger began from the moment the Merger was announced.  In the press release by EngageSmart and Vista announcing the take-private Merger, as well as other filings leading up to and including the Proxy, the EngageSmart Defendants, General Atlantic and Vista repeatedly misrepresented that:

- The Special Committee, putatively formed to evaluate the Merger, and its financial advisors were wholly independent from both EngageSmart and from the Company's large private equity shareholders that sought to cash out some of their holdings of the Company (controlling shareholder General Atlantic and minority shareholder Summit Partners, L.P. (together with its affiliates, "Summit"));

- The sales process' putatively unfettered "go-shop" process was designed to identify potential counterparties and resulted in the most favorable transaction for EngageSmart shareholders;

- The sales process, including the go-shop process, enabled the Special Committee to conduct an independent evaluation of available transactions and the Merger that allowed the Special Committee and the Board Defendants to recommend the Merger to Unaffiliated Stockholders; and

- The Merger was ultimately fair and in the best interests of Unaffiliated Stockholders and presented the best achievable value for their shares.

5.　　For example, on October 23, 2023, EngageSmart and Vista issued a press release, filed with the SEC on Form 8-K and incorporated by reference into the Proxy (the "October 2023 Merger Press Release"), announcing that EngageSmart had agreed to be acquired by Vista in the take-private Merger for $23 per share (a $4 billion valuation) and representing that the Merger was the result of "a deliberate and thoughtful process" by the Special Committee comprised of

"independent" and disinterested members of the Company's board of directors and "advised by independent legal and financial advisors."

6.      On November 23, 2023, EngageSmart issued a press release, filed with the SEC on Schedule 14A the following day (the "November 2023 Go-Shop Press Release"), which touted EngageSmart's "right to solicit and consider alternative acquisition proposals from third parties during the 'go-shop' period," but stated that the Company "did not receive any alternative acquisition proposals from any third party during the 'go-shop' period."

7.      On December 19, 2023, Defendants issued the Proxy which, while filed by EngageSmart, contained direct representations to Unaffiliated Stockholders by the Special Committee, Board Defendants and EngageSmart about the sales process and fairness of the Meger, as well as representations by General Atlantic and Vista—which acknowledged they may be "deemed to be an affiliate of EngageSmart" under SEC rules.

8.       Like the October 2023 Merger Press Release, the Proxy, among other things, repeatedly characterized the Special Committee as "independent and disinterested" and represented by "independent financial and legal advisors."  It also stated that the Special Committee had determined the Merger was "advisable, fair to, and in the best interests of EngageSmart and the Unaffiliated Stockholders."

9.      The Proxy likewise characterized the Merger agreement as the result of "arm's-length negotiations" by the Special Committee that purportedly led to favorable terms to Unaffiliated Stockholders, including EngageSmart's ability during the go-shop period "to solicit alternative acquisition proposals from, and participate in discussions and negotiations with, third parties" and "to furnish information to, and conduct negotiations with, third parties submitting unsolicited alternative acquisition proposals."  The Proxy emphasized that, in issuing its the

fairness opinion, the Special Committee putatively considered the fact that, once it became public that EngageSmart was exploring strategic options, any party could have submitted a proposal for "a take private transaction to acquire control of EngageSmart."  The Proxy also represented that the Merger with Vista was the best reasonably available transaction to Unaffiliated Stockholders and otherwise assured them that the Vista deal was the only viable option for shareholders to consider, while also touting the robustness and reliability of the sales process.

10.     The Proxy similarly contained a conclusion and recommendation by the Board Defendants "that the Merger is fair to EngageSmart's unaffiliated security holders" based on the "procedural fairness of the Merger, including that [] it was negotiated by the Special Committee consisting solely of independent (for purposes of serving on the Special Committee) and disinterested directors."  The Proxy contained a similar representation by General Atlantic and Vista that they "believe that the Merger is substantively and procedurally fair to EngageSmart's 'unaffiliated security holders,'" based largely on a recitation of the same putative bases of the recommendations by the Special Committee and Board of Directors.

11.     However, as set forth in more detail herein, virtually the entire recitation of facts in the Proxy concerning the sales process that purportedly justified the Merger were self-serving, misrepresented the facts and omitted material details that, if disclosed, would have revealed the truth that the disclosed process was conflicted and slanted toward the wishes of General Atlantic.

12.     Accordingly, the statements in the October 2023 Merger Press Release, November 2023 Go-Shop Press Release and the myriad representations in the Proxy and accompanying Merger-related filings (including a Schedule 13E-3 filed by EngageSmart, General Atlantic and Vista) characterizing and portraying the sales process as robust and fair were materially false and

misleading and omitted material facts. For example, Defendants' public statements misrepresented or failed to disclose the facts that:

- The two-person Special Committee lacked independence from EngageSmart's Board, as well as from controlling shareholder General Atlantic and minority shareholder Summit—a 14% pre-Merger owner of the Company—that were interested in monetizing their EngageSmart investments regardless of the interest of the Unaffiliated Stockholders;

- Evercore—the Special Committee's putative independent financial advisor—was conflicted by prior relationships with General Atlantic and Vista, the desire for repeat business from those large clients and the fees it would receive if the Merger was consummated;

- EngageSmart's Board was hopelessly conflicted by the presence of four designees from General Atlantic (and a fifth, Defendant Bennett, who was beholden to General Atlantic), which wanted to liquidate a portion of its investment in EngageSmart but retain control or at least rollover some of its equity;

- EngageSmart's financial advisor, Goldman Sachs & Co., LLC ("Goldman Sachs"), was conflicted by its relationships with General Atlantic and Vista, and worked closely with General Atlantic to control the sales process to direct it toward General Atlantic's desired result;

- The initial solicitation process and go-shop process were not designed to receive the best result or maximize value for Unaffiliated Stockholders because General Atlantic limited any discussions to a transaction and to potential counterparties that would allow General Atlantic to retain control or rollover some of its equity, thus limiting potential counterparties and not entertaining counterparty bids that might reflect a higher price for control of EngageSmart (or for all of the Company);

- General Atlantic and Goldman Sachs interfered with the sales process and gave preferential treatment of Vista versus other potential bidders, including communicating directly with Vista and providing information to Vista it did not provide to other bidders; and

- As a whole, the conflicted sales process was not designed to maximize value for Unaffiliated Stockholders and did not allow the Special Committee or Board of Directors to conduct an honest evaluation and recommendation to Unaffiliated Stockholders.

13.     All these undisclosed facts meant the Merger was the result of an utterly deficient process in which pervasive conflicts of interest caused General Atlantic—and by extension EngageSmart—to pursue a deal with Vista while forgoing outreach to potential strategic buyers that may have offered greater consideration to Unaffiliated Stockholders, but not the same unique benefits that General Atlantic received, such as the right to maintain control and/or rollover equity.

14.     From the very beginning of the sales process, which commenced with early meetings between General Atlantic and Vista in March 2022, the sales process was hopelessly conflicted and the Merger was the result of a fixed sales process run by Goldman Sachs at the direction of General Atlantic and its conflicted EngageSmart Board appointees, which favored Vista and involved General Atlantic's repeated refusal to consider a "change of control" transaction (thereby limiting the pool of potential counterparties) until late in its negotiations when Vista demanded a "change in control" transaction at the eleventh hour.  Moreover, the two-person Special Committee, which was charged with the responsibility of evaluating EngageSmart's strategic options, was dominated by the EngageSmart Board appointee from Summit, which had a longstanding relationship with General Atlantic and was interested in cashing out its investment in EngageSmart but could not do so except for a strategic transaction.

15.     The utterly deficient process in which EngageSmart failed to adequately canvass the market and tilted the playing field in favor of Vista, culminated in the Merger that allowed General Atlantic to achieve liquidity from its years-old EngageSmart investment while retaining 35% of the ownership to capitalize on potential Company upside.  For its part, Vista was able to parlay its knowledge of the sales process, limited bidders and General Atlantic's motive to shape the transaction in its favor versus the interests of Unaffiliated Stockholders, including minimizing the price it paid in the Merger.

16.     The Proxy and related filings concealed these facts by including a self-serving recitation of the history of the sales process that consistently omitted or shaded the truth.  The Proxy touted a counterfactual narrative in which the sales process was thorough and reliable, there were no significant conflicts of interest, and Vista's $23 per share proposal offered shareholders the best value reasonably obtainable.

17.     The material misstatements and omissions of material facts in the Proxy prevented Plaintiffs and other Unaffiliated Stockholders from properly evaluating the Merger and caused them to accept Merger consideration that failed to adequately value EngageSmart common stock, and for which they could have received higher consideration in a fair and impartial sales process. Likewise, the Defendants' materially false and misleading statements and omissions of material facts in the Proxy and related filings caused Class Members to sell their stock into the Merger at a price that failed to adequately reflect the true value of EngageSmart common stock.

18.     Through this Action, Plaintiffs seek to hold Defendants liable for their misrepresentations and to recover damages for the harm shareholders incurred as a result thereof under:

(i)     <u>Count I</u> against all Defendants for violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9) for material misstatements and omissions of material facts in the Proxy;

(ii)    <u>Count II</u> against the EngageSmart Defendants for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § § 240.10b-5) for untrue statements of a material facts and omissions of material facts in the Proxy and other related filings set forth herein; and

(ii)    <u>Count III</u> against the EngageSmart Defendants and General Atlantic under Section 20(a) of the Exchange Act as control persons for the violations of the Exchange Act.

## JURISDICTION AND VENUE

19.     The claims asserted herein arise under Sections 10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a), 78t(a), and Rules 10b-5 and 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 2401.10b-5 and 17 C.F.R. § 240.14a-9. This Court has jurisdiction over the subject matter of those claims pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

20.     Personal jurisdiction exists over each Defendant either because: (i) the Defendant conducts business in or maintains operations in this District; or (ii) is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. At all relevant times, EngageSmart was incorporated in this District, and many of the acts and conduct that constitute the violations of law complained of herein occurred in this District, including the dissemination of false and misleading statements in and from this District.

22.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### A.     Plaintiffs

23.     Plaintiff AltShares Event-Driven ETF ("AltShares") is an exchange-traded investment fund formed in 2014 and organized under Delaware law.

24. Plaintiff The Arbitrage Fund is an investment fund formed in 2000 and organized under Delaware law.

25. Plaintiffs are both advised by Water Island Capital, LLC, a New York domiciled SEC registered entity.

26. As set forth in the attached certification, Plaintiffs held and were beneficial owners of EngageSmart common stock as of the Record Date for the Merger and were entitled to vote on the Merger. Plaintiffs continued to hold EngageSmart common stock through the closing date of the Merger and suffered damages from Defendants' violations of the federal securities laws alleged herein.

### B. Defendants

#### 1. Defendant EngageSmart

27. EngageSmart, Inc. is a Delaware corporation headquartered in Braintree, Massachusetts. EngageSmart traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ESMT" until the Merger closed, after which it was delisted from the exchange. EngageSmart continues to exist as a subsidiary of an affiliate of Vista. As a result of the Merger, Vista affiliates hold approximately 65% of EngageSmart's equity and General Atlantic affiliates hold approximately 35% of EngageSmart's equity.

#### 2. The Special Committee Defendants

28. Matthew G. Hamilton served as a director of EngageSmart from 2018 through the close of the Merger. Defendant Hamilton was a member of the Special Committee from June 27, 2022 to its suspension on October 27, 2022, and again from the date the suspension was revoked on July 23, 2023 until the close of the Merger. Defendant Hamilton was a Managing Director at Summit at all relevant times and was Summit's nominee to the Board. Defendant Hamilton

previously served on the board of directors of Invoice Cloud, EngageSmart's predecessor and a current subsidiary of the Company.

29. Diego Rodriguez served as a director of EngageSmart from 2022 through the close of the Merger. Defendant Rodriguez was a member of the Special Committee from June 27, 2022 to its suspension on October 27, 2022, and again from the date the suspension was revoked on July 23, 2023 until the close of the Merger. Defendant Rodriguez was recommended by Goldman Sachs to serve as a director.

30. Defendants Hamilton and Rodriguez—who comprised the Special Committee in the relevant period leading to the Merger and are referred to herein as the "Special Committee Defendants"—opined to Unaffiliated Stockholders that the Merger Agreement was "advisable, fair to, and in the best interests of EngageSmart and the Unaffiliated Stockholders" and recommended that the Unaffiliated Stockholders vote in favor of the Merger, and caused that recommendation to be included in the Proxy, despite the undisclosed conflicts and deficiencies in the sales process.

### 3. The Board Defendants

31. Deborah A. Dunnam served as a director of EngageSmart from 2021 through the close of the Merger. Defendant Dunnam was a member of the Special Committee from June 27, 2022 to its suspension on October 27, 2022, but did not serve on the Special Committee after the suspension was revoked on July 23, 2023 purportedly due to the fact she had recently been "introduced to a professional opportunity by General Atlantic."

32. Preston McKenzie served as a director of EngageSmart from 2019 through the close of the Merger. Defendant McKenzie was an Operating Partner at General Atlantic at all relevant times and was a General Atlantic nominee to the Board.

33.     David Mangum served as a director of EngageSmart from 2019 through the close of the Merger.  Defendant Mangum was a Senior Advisor at General Atlantic at all relevant times and was a General Atlantic nominee to the Board.

34.     Raph Osnoss served as a director of EngageSmart from 2019 through the close of the Merger.  Defendant Osnoss was a Managing Director at General Atlantic at all relevant times and was a General Atlantic nominee to the Board.

35.     Robert P. Bennett is the founder of EngageSmart and served as the Company's Chief Executive Officer ("CEO") and as a director of EngageSmart from Company's initial public offering in 2019 through the close of the Merger.  Defendant Bennett served as CEO of EngageSmart following the Merger until April 2024.  Defendant Bennett previously served as CEO of Invoice Cloud.

36.     Paul G. Stamas served as Chairman of the EngageSmart Board from 2019 through the close of the Merger.  Defendant Stamas was a Managing Director at General Atlantic at all relevant times and was a General Atlantic nominee to the Board.  Defendant Stamas signed the Proxy.

37.     Defendants Bennett, Dunnam, Mangum, McKenzie, Osnoss and Stamas, along with Defendants Hamilton and Rodriguez, are collectively referred to herein as the "Director Defendants."  The Director Defendants caused the Proxy to be issued and purportedly determined that the Merger Agreement was "advisable, fair to, and in the best interests of EngageSmart and its Stockholders," recommended that the Unaffiliated Stockholders vote in favor of the Merger, and caused that recommendation to be included in the Proxy, despite the undisclosed conflicts and deficiencies in the sales process.

### 4.    The Officer Defendants

38.    Cassandra Hudson has served as EngageSmart's Chief Financial Officer from 2020 to the present.  Defendant Hudson signed EngageSmart's Form 8-K and Schedule 14A concerning the Merger filed, respectively, on October 23, 2023 and November 23, 2023.

39.    Scott Semel served as Chief Legal Officer and Secretary of EngageSmart from 2022 through the close of the Merger.  Defendant Semel served as Chief Legal Officer and Secretary of EngageSmart following the Merger until April 2024.  Defendant Semel signed the *Notice of Special Meeting of Stockholders to be Held on January 23, 2024* that was included in the Proxy.

40.    Defendants Bennett, Hudson and Semel are together referred to herein as the "Officer Defendants."  The Officer Defendants signed or caused EngageSmart to file the Forms 8-K or Proxy that contained false or misleading statements of material facts or omitted material facts necessary to make the statements therein not false or misleading.

### 5.    Defendant General Atlantic

41.    General Atlantic, L.P. (along with its subsidiaries and affiliates), a Delaware Limited Partnership, is a global investment firm with $83 billion in assets under management that provides capital and strategic support for 227 current portfolio companies worldwide.  Immediately prior to the Merger, General Atlantic owned approximately 52% of the common stock of EngageSmart and was the Company's controlling stockholder.

42.    As set forth herein, beginning in 2022, General Atlantic sought a strategic transaction that would monetize and generate liquidity from its five-year investment in EngageSmart, but allow General Atlantic to maintain its status as controlling shareholder or, at the very least, to rollover some of its equity interest into the post-transaction Company to maintain some upside exposure.

43.     General Atlantic made specific representations in the Proxy concerning General Atlantic's "position" on the fairness of the Merger and the bases for that position, and otherwise permitted its name to be used to solicit consent for the Merger from Unaffiliated Stockholders through the Proxy, that, as set forth herein, contained false or misleading statements of material facts or omitted material facts necessary in order to make the statements in the Proxy materials not false or misleading.

44.     General Atlantic also jointly with EngageSmart and Vista filed the Schedule 13E-3 for the Merger that repeated Defendants' prior statements about the sales process for the Merger, including the material misstatements and omissions of material facts concerning the conflicted nature of the Special Committee's and Board's recommendations and the sales process overall.

### 6.     Defendant Vista

45.     Vista Equity Partners Management, LLC (along with its subsidiaries and affiliates), a Delaware limited liability company, is a global firm with more than $100 billion in assets under management that exclusively invests in enterprise software, data and technology-enabled organizations.  In January 2024, Vista and its affiliates acquired approximately 65% of the equity of EngageSmart through the take-private Merger of EngageSmart and a merger subsidiary formed by Vista.

46.     Vista made specific representations in the Proxy concerning Vista's "position" on the fairness of the Merger and the bases for that position, and otherwise permitted its name to be used to solicit consent for the Merger from Unaffiliated Stockholders through the Proxy, that, as set forth herein, contained false or misleading statements of material facts or omitted material facts necessary in order to make the statements in the Proxy materials not false or misleading.

47.     Vista also jointly with EngageSmart and General Atlantic filed the Schedule 13E-3 for the Merger that repeated Defendants' prior statements about the sales process for the Merger,

including the material misstatements and omissions of material facts concerning the conflicted nature of the Special Committee's and Board's recommendations and the sales process overall.

## I.     FACTUAL BACKGROUND

48.     Many of the below background facts are taken from the Proxy's recitation of the purported history and facts leading up to the Merger.  However, on information and belief, the Proxy's self-serving factual recitation obscures, shades or fails to disclose critical facts that cause the Proxy (and related documents concerning the Merger) to contain materially false and misleading statements, and omissions of material facts.

### A.     General Atlantic's Ownership and Governance Rights Over EngageSmart

49.     EngageSmart, located in Braintree, Massachusetts, provides vertically tailored customer engagement software and integrated payments solutions through two segments: (i) the SMB Solutions segment that provides end-to-end practice management solutions geared toward the Health & Wellness industry and (ii) the Enterprise Solutions segment that provides Software-as-a-Service (SaaS) solutions that simplify electronic billing and digital payments.  Defendant Bennett founded EngageSmart (which was then known as InvoiceCloud) in 2009.

50.     In January 2015, Summit made a venture investment in EngageSmart.  In December 2018, General Atlantic also made an investment in EngageSmart that allowed it to become the majority owner of the Company.  In the press release for the transaction, Defendant Bennett, the founder, CEO and Board member of EngageSmart, lauded the "continued support of Summit" and "new partnership" with General Atlantic.  Defendant Stamas, Managing Director at General Atlantic, likewise noted that General Atlantic was "very pleased to partner with [EngageSmart]."

51.     Three years later, on September 27, 2021, EngageSmart completed an initial public offering (the "IPO") of 13.6 million shares of EngageSmart common stock at a public offering price of $26.00 per share, for net proceeds of $326.4 million and a $4.2 billion valuation.

Following the IPO, in which General Atlantic and Summit did not sell shares, General Atlantic owned 97.2 million shares consisting of 59.9% of the equity and Summit owned 26.9 million shares consisting of 16.6% of the equity.

52. Following the IPO and until the Merger, General Atlantic and Summit had certain rights to designate members of the Board. Under a stockholder agreement executed in connection with the IPO (the "Stockholder Agreement), as long as General Atlantic beneficially owned over 50% of the common stock, it was entitled to nominate five of EngageSmart's eight directors. Provided Summit beneficially owned at least 10% of the common stock, it was entitled to nominate one director. At all times from the IPO to the Merger, General Atlantic and Summit owned at least 52% and 15%, respectively, of the Company's common stock.

53. Accordingly, from shortly after the IPO and through the Merger, the members of EngageSmart's Board controlled by General Atlantic and Summit consisted of (i) Defendants Stamas, Mangum, McKenzie and Osnoss, each of whom was appointed by General Atlantic and continued to maintain simultaneously senior positions at General Atlantic, (ii) Defendant Bennett, EngageSmart's founder and CEO, who was also beholden to General Atlantic as the controlling shareholder and (iii) Defendant Hamilton, who was appointed by Summit and continued to maintain simultaneously a senior position at Summit.

54. The purportedly "independent" directors were (i) Defendant Dunnam, who was suggested for service on the Board by General Atlantic and later "introduced to a professional opportunity by General Atlantic" and (ii) Defendant Rodriguez, who was recommended for service on the Board by Goldman Sachs—General Atlantic's longtime financial advisor.

55. Separately, General Atlantic was entitled to exercise control over EngageSmart's transactions under the Stockholder Agreement. Provided General Atlantic owned at least 25% of

the common stock, EngageSmart could not engage in any "Major Actions"—including a merger—without General Atlantic's written consent.

56.     To address concerns about General Atlantic's control over EngageSmart and mitigate price discounts associated with controlled companies, the Company's *Amended and Restated Certificate of Incorporation* (the "<u>Charter</u>") contained a provision requiring equal treatment of all common stock.  Specifically, the "equal treatment" provision provides: "[e]xcept as otherwise required by law or expressly provided in this Certification of Incorporation, each share of Common Stock shall have the same powers, rights and privileges and shall rank equally, share ratably and be identical in all respects as to all matters."

57.     The "equal treatment" provision was designed to effectively prevent a controller such as General Atlantic from receiving disparate treatment for its shares, such as a control premium and to reassure investors and lessen the price discount inherent in General Atlantic's control over EngageSmart.  It worked.  EngageSmart's IPO priced at $26 per share generated considerable interest from investors.  On the first day of trading on September 23, 2023, EngageSmart's common stock price increased 31.2%, closing at $34.12 per share.

58.     At the closing price on the first day of trading, General Atlantic's 97.2 million shares were worth approximately $3.3 billion.

59.     The Proxy ultimately acknowledged that the "equal treatment" provision in the Charter required that "[e]xcept as otherwise required by law or expressly provided in this Certification of Incorporation, each share of Common Stock shall have the same powers, rights and privileges and shall rank equally, share ratably and be identical in all respects as to all matters."

60. Nevertheless, despite the "equal treatment" provision, General Atlantic pursued a Merger that, unlike Unaffiliated Stockholders, enabled it to rollover certain of its equity interest into the newly-private Company.

**B.** **General Atlantic Explores a Strategic Transaction with Vista Only Six Months After the IPO**

61. Just six months following the IPO, General Atlantic, which had not sold any shares or generated liquidity in the IPO, began to explore a strategic transaction with Vista. At that time, General Atlantic's investment in EngageSmart was more than three years old and General Atlantic sought to monetize some of its investment while maintaining ownership and future upside in the Company.

62. According to the Proxy, on March 31, 2022, Defendant Stamas "had an introductory breakfast with a representative of Vista." The Proxy characterized the meeting as "part of General Atlantic's ordinary course business practices of having discussions with private equity sponsors and other participants in the industries in which General Atlantic's portfolio companies operate." However, there is no evidence or information suggesting that General Atlantic was meeting with other potential strategic counterparties during this time.

63. The next day, on April 1, 2022, Defendant Stamas introduced the Vista representative to Defendant Bennett over email, after which they scheduled an introductory meeting for April 22, 2022. According to the Proxy, during the April 22 meeting, the "representatives of Vista and Mr. Bennett discussed EngageSmart and the industry in which it operates and Vista's interest in learning more about EngageSmart and its businesses," but purportedly "[n]o specific terms of a potential transaction were discussed."

64. On May 3, 2022, the EngageSmart Board held its regularly scheduled meeting. As Defendant Bennett had suggested as early as March 29, during an executive session at the meeting,

the Board discussed with representatives of Goldman Sachs strategic alternatives available to EngageSmart.

65. One or more of Defendants Stamas, Bennett and/or Hudson had follow-up meetings or calls with representatives from Vista on at least May 16, May 31, June 6, June 9 and June 11 about Vista receiving more information about EngageSmart. Based on these discussions, on June 23, 2022, "representatives of Vista sent representatives of EngageSmart a proposed agenda for a management presentation, scheduled for June 29, 2022, and an initial diligence request list."

66. On June 27, 2022, the Board Defendants held a meeting, also attended by management, during which the attendees addressed the discussions with Vista, Vista's interest in EngageSmart and a potential transaction with Vista. Also in attendance were representatives from Skadden, Arps, Slate Meagher & Flom LLP ("Skadden"), whom Defendant Semel had contacted to represent the Special Committee to be formed in contemplation of the possibility that Vista may submit a proposed transaction with EngageSmart.

67. During the meeting, the original Special Committee was formed, consisting of Defendants Dunnam, Hamilton and Rodriguez, to, according to the Proxy:

> Consider and evaluate all proposals that might be received by EngageSmart in connection with a possible sale or other business transaction involving all or substantially all of EngageSmart's equity or assets on a consolidated basis and other strategic alternatives to such transaction, to participate in and direct the negotiation of the terms and conditions of any transaction, to authorize, monitor and exercise general oversight on behalf of EngageSmart of all agreements, proceedings and activities of EngageSmart involving, responding to or relating to any transaction, to consider any other strategic alternatives to such a transaction, to terminate any negotiations, discussions or consideration of, or reject, on behalf of EngageSmart, any transaction or other strategic alternative, to recommend to the EngageSmart Board the advisability of entering into definitive documents and agreements with respect to any transaction or other strategic alternative and to

> provide a recommendation to the EngageSmart Board as to whether
> or not to approve any such transaction or other strategic alternative.

68.     The next day, on June 28, 2022, EngageSmart and Vista entered into a non-disclosure agreement ("NDA").  Following execution of the NDA, Defendants Bennett, Hudson and Semel dined with a representative of Vista to, according to the Proxy, discuss EngageSmart and its businesses and Vista's interest in a potential strategic transaction involving EngageSmart.

69.     On at least June 29, July 7 and July 19, Defendant Bennett, EngageSmart and/or General Atlantic held meetings, calls or presentations with Vista regarding a potential transaction. Between June 30, 2022 and July 15, 2022, EngageSmart provided Vista access to a virtual data room and provided confidential due diligence information in response to requests from Vista.

70.     On July 20, 2022, Defendant Hamilton, Summit's designee to the Board, corresponded with another Summit Managing Director discussing the possibility of retaining Evercore Group L.L.C. ("Evercore") (which, as discussed below, was conflicted in a number of ways) to represent the Special Committee.

71.     Despite all the foregoing, on July 27, 2022 and July 29, 2022, respectively, representatives of Vista called Defendant Bennett and Defendant General Atlantic to inform them that Vista, as characterized by the Proxy, "was pausing its exploration of a potential transaction involving EngageSmart."  Vista sought to let EngageSmart and General Atlantic "down easy" to indicate the work put into a potential transaction was not a waste of time and to preserve the relationship in case a transaction could be revisited later.

72.     On October 27, 2022, the EngageSmart Board held a regularly scheduled meeting during which the Board determined that EngageSmart no longer had any strategic matters pending and thus suspended the Special Committee.

**C.** **General Atlantic and EngageSmart Renew Their Pursuit of a Transaction with Vista Amidst Unsolicited Interest from Other Parties**

73.    In March 2023, General Atlantic and Summit generated liquidity from their EngageSmart investments when, together with Officer Defendants Bennett and Hudson, they sold 8 million common shares in a secondary offering at a price to the public of $19.00 per share.

74.    Nevertheless, although General Atlantic received more than $126 million in liquidity from the offering (Summit received approximately $35 million), General Atlantic renewed its exploration of a transaction with Vista in a series of meetings between and among Vista, General Atlantic's representatives and Board designees, and EngageSmart, commencing with an April 26, 2023 meeting between a representative from Vista and a representative from General Atlantic regarding EngageSmart and its business performance.

75.    On May 1, 2023, at the request of General Atlantic, members of senior management of EngageSmart met with two of General Atlantic's EngageSmart Board designees—Defendants McKenzie and Mangum—to discuss detailed business and financial information of EngageSmart in connection with General Atlantic's evaluation of EngageSmart's strategic direction.

76.    On June 12, 2023, Defendant Stamas attended a conference also attended by representatives of Vista. At a dinner at the conclusion of the conference, Defendant Stamas spoke with a representative of Vista and the following day, Defendant Stamas and the representative of Vista played a round of golf together.

77.    According to the Proxy, in July 2023, representatives of General Atlantic began discussing with EngageSmart management its desire that the Company explore a potential strategic transaction that would result in General Atlantic retaining its controlling ownership of the outstanding EngageSmart Common Stock while enabling one or more new sponsors to invest in EngageSmart.

78.     The Proxy describes the initial renewed discussions in 2023 between and among EngageSmart, General Atlantic and Vista in such a way to portray them as routine, matter of fact and preliminary.  In truth, the interactions between and among EngageSmart, General Atlantic and Vista were detailed, deliberate and intended to advance toward a transaction.[1]

### D.     General Atlantic Works with Its Financial and Legal Advisors on a Non-Control Transaction Acceptable and Beneficial to General Atlantic

79.     From June 22, 2023 and July 17, 2023, there were a "series of calls" between representatives of General Atlantic and representatives of Goldman Sachs to, as characterized in the Proxy, "discuss a potential strategic transaction involving EngageSmart, with particular focus on how such a transaction could be structured in order to enable future tax efficient spinoff structures for a separation of EngageSmart's businesses."  According to the Proxy, "[f]ollowing those discussions" with Goldman Sachs, General Atlantic indicated "that, while it was generally willing to consider other types of offers, a process focused on soliciting interest in a potential transaction that would continue General Atlantic's controlling ownership would be more likely to generate attractive offers than an open-ended process without guidance to potential investors regarding General Atlantic's preferred structure."

80.     However, in truth, according to documents obtained by plaintiffs in one of the Delaware fiduciary duty actions, General Atlantic's work with Goldman Sachs was far more detailed than merely a "series of calls," and focused from the beginning *solely* on a transaction that would allow General Atlantic to rollover their controlling stake and have a strategic partner buy the rest.  General Atlantic, Goldman Sachs and General Atlantic's legal advisors focused on a take-

---

[1] Separately, according to the Proxy, from mid-March 2023 to mid-July 2023, Officer Defendants Bennett and Hudson, Defendant Stamas and/or representatives from General Atlantic had intermittent unsolicited expressions of interest in EngageSmart from companies and financial sponsors the Proxy refers to as Parties A, B, C & G.

private transaction without sale of shares by General Atlantic and discussed creating a mandate to any special committee to preclude any other transactions. Goldman Sachs conducted an analysis of a potential transaction at various levels in $1 increments from $20 per share to $30 per share, with Goldman Sachs' global head of its Investment Banking Division's financial technology sector responding that he "would stop at $27."

  **E. The EngageSmart Board Reconstitutes the Conflicted Special Committee**

  81. On July 21, 2023, the Special Committee, as "previously constituted" prior to its suspension on October 27, 2022, held a meeting with Defendant Semel and representatives of Skadden to discuss the desire expressed by General Atlantic that EngageSmart explore third party interest in a potential transaction involving EngageSmart that "would continue General Atlantic's controlling ownership in EngageSmart while (1) enabling one or more new sponsors to invest in EngageSmart and (2) allowing EngageSmart's existing stockholders to receive a cash payment for their investment." The Special Committee also discussed "that the EngageSmart Board would need to revoke the suspension of the Special Committee and reconfirm its mandate and authority in order for the Special Committee to be properly constituted and that the matters discussed at this meeting would be presented to and considered by the Special Committee after the EngageSmart Board revoked its suspension."

  82. On July 23, 2023, the EngageSmart Board held a meeting, attended by management of EngageSmart and representatives of Skadden and Goldman Sachs. Defendant Stamas reiterated General Atlantic's desire that EngageSmart undertake a process to explore third party interest in a potential take-private transaction involving EngageSmart that would continue General Atlantic's controlling ownership of EngageSmart while enabling new sponsors to invest in and allowing EngageSmart's existing stockholders to receive a cash payment. A representative of Skadden purportedly reviewed with the EngageSmart Board information relevant to whether Defendants

Dunnam, Hamilton and Rodriguez were disinterested with respect to General Atlantic and a potential transaction. Defendant Dunnam was evidently removed from the Special Committee because she had been recently introduced to a professional opportunity by General Atlantic and could not serve as a member of the reconstituted Special Committee.

83.     However, the "new" Special Committee without Defendant Dunnam was far from independent and unconflicted.  Defendant Hamilton's loyalties were split between his dual fiduciary duties to (1) EngageSmart as a member of the Board (dominated by the General Atlantic designees and Defendant Bennett) and (2) Summit as a Managing Director.  And the interests of Summit, his primary employer, were aligned more with General Atlantic than with EngageSmart or its Unaffiliated Stockholders.  This was because, like General Atlantic, Summit sought to monetize at least part of its investment in EngageSmart—which it first made in 2015.

84.     Because Summit owned 15% of EngageSmart, it could not exit the investment through open market sales without causing a significant decline in the Company's stock price. Therefore, Summit (and Hamilton as Summit's Managing Director) was incentivized to pursue a transaction that would ensure a timely exit and favorable returns for its older funds, even if it was not in the best interests of EngageSmart or its Unaffiliated Stockholders.

85.     Summit also has a deep history that aligned it with General Atlantic, including collaboration on at least seven deals in the past seven years and instances where General Atlantic has infused significant capital into Summit-backed companies or acquired large equity stakes from Summit.

86.     In other words, Defendant Hamilton was conflicted between his duties to the EngageSmart Board and Special Committee on behalf of shareholders, and his duty to Summit and

24

its desire to exit the investment, generate liquidity and maintain its longstanding relationship with General Atlantic to promote future investments with General Atlantic.

87. As a result of the removal of Defendant Dunnam, the Special Committee consisted of just two members, the hopelessly conflicted Defendant Hamilton, and Defendant Rodriguez, who was originally recommended to serve on the EngageSmart Board by Goldman Sachs. There is no indication that Defendant Rodriguez had the ability, or even attempted, to go against the wishes of Defendant Hamilton, Summit or General Atlantic.

### F. Defendant Hamilton Retains Conflicted Evercore on Behalf of the Special Committee

88. Defendant Hamilton—one of the two Special Committee members, who was beholden to Summit—led the process of retaining financial advisors for the Special Committee. Defendant Hamilton immediately honed in on Evercore, the retention of which Defendant Hamilton hoped would benefit Summit in later transactions, including a current transaction involving a seller advised by Evercore that Defendant Hamilton's colleague at Summit was pursuing at the time.

89. Evercore was hopelessly conflicted by previous relationships with General Atlantic, Summit and Vista. Evercore had received approximately $41 million in fees from General Atlantic over the preceding five years. Evercore had earned $36 million in aggregate fees over the past five years on behalf of Summit and its affiliates. Evercore additionally earned fees of $18.5 million from Vista between January 2020 and October 2023.

90. Evercore's retention agreement created other conflicts. Evercore would only receive fees if EngageSmart completed a strategic transaction and, if EngageSmart remained a standalone company (an outcome that may have benefited Unaffiliated Shareholders), Evercore would receive nothing. In this regard, Evercore requested that its retention include a fee if no

transaction occurred and EngageSmart remained a standalone entity. The Special Committee refused. According to the Proxy, Evercore ultimately received $24 million. General Atlantic later acknowledged the multi-million dollar "success fee" created a perverse incentive for the advisers to approve any deal on the table.

### G. The Special Committee Approves EngageSmart's Retention of Conflicted Financial Advisors

91. Additional conflicts were created when the EngageSmart Board retained (and the Special Committee "approved") Goldman Sachs as its financial advisor. Goldman Sachs was also hopelessly conflicted as it had a longstanding and lucrative relationship with General Atlantic and acted for General Atlantic's benefit throughout the sales process. Goldman Sachs had previously extended a $150 million term loan to General Atlantic, and, in just the prior two years, earned approximately $100 million in fees from General Atlantic and its portfolio companies for financial advisory services and underwriting services. Goldman Sachs was also currently advising a General Atlantic portfolio on strategic alternatives and General Atlantic in another take-private transaction announced in February 2024. General Atlantic was also borrowing €300 million from Goldman Sachs to repay a loan and Goldman Sachs was a $50 million lender on a revolving loan to a General Atlantic affiliate due September 2025.

92. Further, like Evercore, Goldman Sachs had a longstanding relationship with Summit and its portfolio companies, earning approximately $25 million in aggregate compensation over the prior two years. Goldman Sachs had also recognized approximately $100 million in aggregate compensation from Vista for financial advisory and underwriting services over the past two years.

93. Like Evercore, Goldman Sachs' retention provided it would only receive fees if EngageSmart completed a strategic transaction. Goldman Sachs ultimately received $36 million.

**H.      The Special Committee "Approves" the Script and Buyer List that Severely Limits the Potential Bidders**

94.     On August 6, 2023, Evercore participated in a call with Goldman Sachs and Skadden to discuss the sales process.  Evercore immediately recognized the problems with General Atlantic's proposed structure and process plan, noting that it was important to keep open the possibility of a transaction encompassing the whole company—which was contrary to General Atlantic's wishes.   Evercore began questioning General Atlantic's true motivation for insisting on a minority-stake transaction, concluding that the potential tax benefits touted by General Atlantic were too small to significantly impact bidding.  On August 7, 2023, Evercore also pointed out to the Special Committee that the Company's performance was not fully reflected by its stock price because EngageSmart was outperforming peers in revenue growth, gross margin and adjusted EBITDA margin.

95.     During an August 8, 2023 Special Committee meeting, representatives of Evercore and the Special Committee discussed the potential level of interest in a minority investment alongside General Atlantic as compared to a whole company or other transaction.   It was discussed that General Atlantic had indicated that it was not presently willing to solicit interest in a whole company transaction, which meant that no outreach to strategic parties was proposed at such time and that General Atlantic was expected to prioritize outreach to investors that it viewed as likely to be interested in a minority investment with General Atlantic continuing as the controlling stockholder of EngageSmart.

96.     At its August 8, 2023 meeting, the Special Committee reviewed the list of prospective investors and the contents of the outreach script.  The list excluded any strategic buyers who would likely demand a control or whole-company deal.  The list also did not include Vista as a preferred candidate, despite its prior interest in the Company because Vista was expected to

pursue a control deal that the advisors believed General Atlantic disfavored. The Special Committee did not finalize the "outreach script" or "buyer list" at this meeting because it was still awaiting feedback from General Atlantic.

97. On August 9, 2023, representatives of General Atlantic provided feedback to EngageSmart and Goldman Sachs (but not the Special Committee, Skadden or Evercore) on the contents of the outreach script and the list of prospective investors reflecting that General Atlantic was not presently willing to solicit interest in a whole company transaction and desired to prioritize outreach to investors that it viewed as likely to be interested in a minority investment with General Atlantic continuing as the controlling stockholder.

98. Later on August 9, 2023, the Special Committee (along with Evercore and Skadden) reviewed the proposed changes from General Atlantic to the outreach script and the list of potential investors (with prioritization), approved the materials, and confirmed that Goldman Sachs could proceed to initiate outreach to such investors.

99. Despite Evercore's concerns about General Atlantic's proposed structure and the narrow field of potential bidders, the Special Committee took no substantive action to alter the process or to solicit more competitive bids. Instead, the Special Committee allowed General Atlantic and Goldman Sachs to proceed with the script and pool of potential investors that would potentially be interested in a minority stake transaction.

100. The list of priority prospective investors did not include Vista which, along with other potential investors, was identified on a separate list for future consideration for additional outreach. These potential investors were not among the priority contacts because General Atlantic and Goldman Sachs expected these sponsors to be potentially less receptive to a minority investment.

### I.     Defendant Bennett Contacts Vista Outside the Solicitation Process

101.     Despite Vista's omission from the preferred list, given Vista's prior interest in EngageSmart, on August 8, 2023, Defendant Bennett contacted a representative of Vista who had been involved in the discussions in 2022 and asked about Vista's view of EngageSmart's performance relative to Vista's prior expectations.   Defendant Bennett was interested in the lucrative severance payments he would receive in a change of control of the Company, including a lump sum cash payment equal to 18 months of his base salary and immediate vesting of previously granted share awards and restricted stock units and any unvested stock options.   The Company's other executives were subject to employment agreements under which they would likewise financially benefit from a change of control.

102.     On August 15, 2023, following a representative from Vista contacting representatives from General Atlantic, the parties set up a call on August 21, 2023 during which Vista expressed that they had continued to follow EngageSmart since the disengagement in 2022 and remained interested if there was ever mutual interest in pursuing a potential transaction.

103.     On September 5, 2023, Defendant Bennett and a representative of Vista met in San Francisco, California.   At this meeting, the representative of Vista provided positive views on EngageSmart's performance compared to Vista's internal expectations, noting a heightened interest in EngageSmart's SMB Solutions business segment as compared to its Enterprise Solutions business segment.

### J.     The Solicitation Process Proceeds Targeting a Minority Investment Preferred by General Atlantic

104.     Between August 22, 2023 and September 14, 2023, EngageSmart held management presentations with General Atlantic's preferred potential investors.

105. On August 31, 2023, the Special Committee held a meeting, also attended by Defendant Semel and representatives of Evercore and Skadden. After a discussion of management's projections, Evercore then updated the Special Committee on the process for determining investor interest in a potential transaction involving EngageSmart. Following discussion, the Special Committee authorized EngageSmart to share the management projections with General Atlantic (which was a necessary step because no transaction would be able to proceed without the support of General Atlantic) and with prospective investors interested in a potential transaction.

106. Following the August 31, 2023 Special Committee meeting, a representative of Skadden provided the EngageSmart Board with the management projections previously reviewed by the Special Committee and authorized for use with prospective investors interested in a potential transaction.

107. On September 5, 2023, General Atlantic contacted Goldman Sachs indicating it had no comments with respect to the management projections previously reviewed by the Special Committee and provided to the EngageSmart Board. Thereafter, Goldman Sachs shared the management projections with the preferred potential investors and EngageSmart provided limited confidential due diligence materials, where requested, to those who remained engaged in evaluation of a potential transaction.

108. On September 9, 2023 and September 15, 2023, EngageSmart was informed by certain targets that they were no longer interested in participating in the process for a potential transaction involving EngageSmart, citing its belief that EngageSmart was currently fully valued and concerns about transaction size.

**K.** **General Atlantic Focuses in on Vista**

109.  On September 18, 2023, based on the lack of interest from the preferred investors, Goldman Sachs indicated to Evercore that General Atlantic was proposing that Vista should be included in EngageSmart's strategic process.  Evercore conveyed the proposal to the Special Committee.  General Atlantic did not otherwise instruct Evercore or Goldman Sachs to expand the search for potential investors.

110.  On September 19, 2023, Evercore contacted Goldman Sachs indicating that the Special Committee had "approved" inviting Vista to participate in the strategic process. Representatives of Goldman Sachs contacted Vista using the outreach script previously approved by the Special Committee.  On September 22, 2023, EngageSmart entered into an amended and restated non-disclosure agreement with Vista, (which amended and restated the 2022 non-disclosure agreement), which contained a standstill provision.  Following the execution of the amended and restated non-disclosure agreement, representatives of Goldman Sachs shared with Vista the management projections.  Between September 22, 2023 and October 9, 2023, EngageSmart provided limited confidential due diligence materials to Vista.

111.  On September 26, 2023, the Special Committee held a meeting during which, according to the Proxy, Evercore discussed with the Special Committee potential strategic alternatives for EngageSmart, including remaining a standalone public company, separating the SMB Solutions and Enterprise Solutions businesses, selling EngageSmart in a change of control transaction, or, consistent with the structure for a potential transaction that General Atlantic desired to explore investor interest for, selling a minority stake without a change of control.  Once again, General Atlantic wanted to explore investor interest only in connection with selling a minority ownership stake in EngageSmart without a change of control.  It was not willing at the current time to expand the scope of a potential transaction.

31

112. On September 26, 2023, Evercore and Goldman Sachs sent a bid process letter to Vista and General Atlantic's prior preferred investor targets who were still engaged in the process for a potential transaction. The bid process letter specified that each of the initially contacted parties should submit its preliminary indication of interest by October 5, 2023.

113. On September 27, 2023, EngageSmart held a management presentation based on non-public diligence information with representatives of Vista, also attended by representatives of Evercore and Goldman Sachs. On September 29, 2023, management of EngageSmart and Evercore and Goldman Sachs met with representatives of Vista to discuss the management projections. And on September 30, 2023, representatives of Vista had a call with a representative of General Atlantic regarding a potential transaction involving EngageSmart. On October 4, 2023, management of EngageSmart and Evercore and Goldman Sachs met with representatives of Vista to further discuss the management projections.

114. According to the Proxy, between September 28, 2023 and October 9, 2023, EngageSmart, Goldman Sachs and Evercore were in contact with at least six other unidentified preferred investors, including providing projections and limited confidential due diligence materials, where requested.

115. On October 5, 2023, *Reuters* published an article reporting that General Atlantic was exploring a sale of EngageSmart, that several private equity firms were participating in the process, that the first-round of bidding was underway and that initial offers were due later that day. According to the Proxy, between October 5, 2023 and October 8, 2023, representatives of Goldman Sachs and Evercore received unsolicited inbound communications with respect to interest in a potential transaction involving EngageSmart from eight parties not included on the original list of potential counterparties.

116. According to the Proxy, also on October 5, 2023 and October 6, 2023, the four remaining preferred potential investors each submitted written preliminary indications of interest to Evercore and Goldman Sachs for up to 49% of the outstanding shares of EngageSmart common stock in a going private transaction for $17 to $21 per share. Vista did not meet the bid deadline; instead, Vista informed Evercore and Goldman Sachs that it required additional time to evaluate a proposal following the October 5, 2023 deadline.

117. On October 7, 2023, Vista contacted Goldman Sachs and, in response to questions from Vista, Goldman Sachs suggested that any bid in this round of the process be above $22.00. On October 9, 2023, Vista called Goldman Sachs and confirmed that Vista intended to submit a proposal for between $22.00 and $23.00 per share in cash and indicated that Vista's proposal letter would reflect its desire to move quickly and conclude remaining due diligence over the following week.

**L.     Vista Submits a Bid and Demands a Quick Timeline to Announce the Merger**

118. Later on October 9, 2023, Vista submitted a bid to Evercore and Goldman Sachs for acquisition of 49% of EngageSmart common stock for between $22.00 and $23.00, with an assumption that General Atlantic would retain and roll over 51% of the existing shares of EngageSmart Common Stock. The proposal indicated that Vista could complete due diligence within seven days after receiving requested data and access and execute a definitive agreement within eight to ten business days. According to the Proxy, the proposal "specified that Vista expected the transaction to be expressly conditioned on the procedures described in" *Kahn v. M&F Worldwide Corp.* and its progeny, including (1) approval by a special committee of independent directors and (2) subject to a non-waivable condition requiring approval of a majority of the shares of EngageSmart Common Stock not owned by General Atlantic.

119.    Following submission of the October 9 Vista Proposal, Evercore and Goldman Sachs jointly spoke with Vista, who expressed the desire to move quickly on the timeline indicated in its proposal and stating that Vista did not intend to continue working past that timeline if EngageSmart was not then prepared to enter into and announce a transaction.

120.    On October 17, 2023, the Special Committee held a meeting, also attended by Defendant Semel, Evercore and Skadden.  According to the Proxy, Evercore updated the Special Committee on interactions with prospective investors interested in a potential transaction involving EngageSmart, that Vista continued to progress its due diligence at the accelerated pace proposed in its proposal, that another bidder had requested a dinner meeting with senior management for the week of October 23, 2023 (to be attended by a representative of Evercore), and that a third bidder appeared to be less engaged.   Evercore discussed with members of the Special Committee the considerations around setting a final bid deadline in the range of November 9, 2023 to November 14, 2023.  Representatives of Skadden discussed with the members of the Special Committee key aspects of a draft merger agreement under discussion between Skadden and Paul Weiss, Vista's legal representatives.

## M.    Vista Demands Change-of-Control and General Atlantic and the Special Committee Capitulate

121.    On October 20, 2023, Vista suddenly submitted a revised change-in-control proposal to acquire 100% of the outstanding shares of EngageSmart Common Stock for $22.75 per share in cash, contingent on General Atlantic rolling over a portion of its existing shares representing 40% of the post-closing equity of EngageSmart.  Vista also indicated it had completed all due diligence and was ready to finalize definitive agreements and, if EngageSmart was not willing to proceed on Vista's expedited timeline, it would reevaluate its participation in the process.

122.    Concurrent with the delivery of the October 20 proposal, Vista held a call with representatives of General Atlantic, Evercore and Goldman Sachs to communicate that Vista was unwilling to further discuss acquiring a minority stake without a change-of-control and that Vista desired to sign and announce a transaction by Monday, October 23, 2023.  In other words, Vista was now demanding a change-of-control and would walk away from the transaction, even though General Atlantic had never indicated its willingness to entertain such a transaction.

123.    Later on October 20, 2023, the Special Committee held a meeting, also attended by Defendant Semel and Evercore and Skadden.  Evercore updated the members of the Special Committee on the terms of the October 20 Proposal and additional communications from Vista about the October 20 proposal.  Representatives of Evercore updated the Special Committee that General Atlantic had provided initial feedback on the October 20 proposal through representatives of Goldman Sachs that General Atlantic was potentially willing to pursue a transaction involving a sale of control as proposed by Vista.  This was the first time General Atlantic indicated its willingness to entertain a change-of-control transaction.

124.    According to the Proxy, Skadden discussed fiduciary duty considerations for the Special Committee in connection with its review and evaluation of the October 20 proposal and potential next steps.  According to the Proxy, the Special Committee discussed the risk that Vista would disengage if EngageSmart delayed engaging with Vista to solicit additional interest in a change-of-control transaction.

125.    The Special Committee also purportedly discussed whether Vista would be willing to pursue an acquisition of EngageSmart without equity rollover by General Atlantic, and representatives of Evercore indicated that this had not been proposed by Vista and that, even if

Vista and General Atlantic were amenable to such a transaction, it was unclear whether Vista would pay more per share to acquire 100% of EngageSmart.

126.    According to the Proxy, Skadden then discussed key legal issues for the Special Committee to consider negotiating in connection with Vista's proposed transaction, including the addition of a go-shop period during which EngageSmart would be permitted to solicit alternative acquisition proposals and representatives of Skadden and Evercore purportedly discussed with the members of the Special Committee different potential structures for a go-shop provision.

127.    According to the Proxy, following further discussion, the Special Committee directed Evercore to make a counterproposal to Vista consisting of $24.00 per share in cash and changes to Vista's proposed merger agreement to include, among other things, a go-shop provision.   According to the Proxy, the Special Committee developed the counterproposal itself and instructed Evercore to share it with Goldman Sachs and, by extension, representatives of Goldman Sachs.   General Atlantic was evidently supportive of counterproposals under certain conditions.

128.    On October 22, 2023, Skadden shared a letter from Evercore describing Evercore's relationships with Vista, General Atlantic and EngageSmart, which the members of the Special Committee did not view as interfering with Evercore's role as an advisor to the Special Committee.

129.    On the morning of October 21, 2023, Vista responded to the October 20 counterproposal with a revised non-binding proposal consisting of increased consideration of $23.00 per share in cash and rejecting the proposed go-shop provision.

130.    Also, on the morning of October 21, 2023, representatives of Goldman Sachs communicated to representatives of Evercore that General Atlantic desired to respond to the

October 21 Proposal in a manner that would maximize the chances of getting Vista to pay $23.50 per share of EngageSmart Common Stock.

131. That afternoon the Special Committee held a meeting, also attended by Defendant Semel and representatives of Evercore and Skadden. According to the Proxy, the Special Committee discussed the potential benefits of proposing a go-shop provision that might be acceptable to Vista and, following additional discussions, the Special Committee directed representatives of Evercore to convey a counterproposal consisting of $23.50 per share.

132. On October 22, 2023, Vista responded to the counterproposal by conveying to Evercore and Goldman Sachs a revised proposal consisting of $23.00 per share in cash, and accepting the proposed 30-day go-shop provision. According to the Proxy, Vista also communicated to Evercore and Goldman Sachs that a deal at $23.00 per share was the highest price per share that Vista was willing to pay.

133. On October 23, 2023, EngageSmart announced the Merger. Thereafter, on December 19, 2023, Defendants issued the Proxy to inform shareholders about the Merger and solicit votes in favor of the Merger.

**N.  The Deficient Go-Shop Proves Unsuccessful**

134. The Merger Agreement provided a go-shop purportedly negotiated by the Special Committee. But any bidders knew it was illusory. By continuing to represent to bidders that General Atlantic would only consider a minority bid, while contemporaneously accepting and negotiating a control bid with a single bidder, the Special Committee and General Atlantic failed to conduct an effective and appropriate pre-signing market check.

135. First, bidders were told General Atlantic would not approve anything but the sale of a minority stake. As a result, bidders were disincentivized from offering control bids.

136.    Second, after General Atlantic earlier provided Vista unfettered access to its advisors, the go-shop precluded bidders from talking to General Atlantic or Summit until after making a superior proposal.

## II.    SHAREHOLDERS VOTE TO APPROVE THE MERGER

137.    On January 23, 2024, EngageSmart held a virtual special meeting of stockholders in which the affiliated and Unaffiliated Stockholders overwhelmingly voted for the Merger.  The Merger closed on January 24, 2024, at which point the Unaffiliated Stockholders received $23 per share as Merger consideration and the Company's common stock was delisted from NYSE.

138.    However, because of Defendants' false or misleading statements or omitted material facts, Unaffiliated Stockholders (which includes the Class Members) were not permitted a true and fair chance to evaluate the Merger, which was unfair to Unaffiliated Shareholders.

139.    Vista would have paid more for EngageSmart.  *First*, upon information and belief, Vista's Investment Committee authorized Vista to pay up to ▮▮▮▮▮▮ for EngageSmart. Moreover, Vista was able to parlay its knowledge of sales process, limited bidders and General Atlantic's desire to retain an interest in the Company to minimize the price paid to Unaffiliated Stockholders.  And General Atlantic was not motivated to press for the maximum Vista would pay because of the significant non-ratable benefits General Atlantic received.

140.    *Second*, upon information and belief, Vista could have paid even more than ▮▮▮▮ ▮▮▮▮ and still meet its target returns.  Vista's model of its expected returns was based on the substantial due diligence Vista conducted in 2022 and 2023, which it used to develop its own value creation plan and projections for EngageSmart, including the prompt ▮▮▮▮▮▮▮▮ ▮▮▮▮.

38

141.    *Third*, Vista significantly accelerated the Company's planned timeline to block out any other bidders. Vista knew that all bidders were told General Atlantic would only support a minority investment, which would depress the value of the bids.

142.    *Finally*, Vista was able to parlay its knowledge of sales process, limited bidders and General Atlantic's desire to retain an interest in the Company to minimize the price paid to Unaffiliated Stockholders.  And General Atlantic was not motivated to press for the maximum Vista would pay because of the significant non-ratable benefits General Atlantic received.

## III.    DEFENDANTS' VIOLATIONS OF THE EXCHANGE ACT

143.    Beginning with the announcement of the Merger in October 23, 2023 through the Proxy and Schedule 13E-3 for the Merger, Defendants repeatedly made or caused to be made SEC filings that contained false or misleading statements or omitted material facts concerning: (i) the Special Committee's lack of independence from the Board, General Atlantic and Vista; (ii) Evercore's conflicts that compromised their advice to the Special Committee; (iii) General Atlantic's interference with the sales process and preferential treatment of Vista; (iv) the overall conflicts that rendered the sales process inadequate; and (v) ultimately, as a result of all of the foregoing, the unfairness of the Merger to the Unaffiliated Shareholders and the inability of Unaffiliated Shareholders and Class Members to evaluate the Merger .

### A.    False or Misleading Statements or Omissions of Material Facts in the October 2023 Merger Press Release

144.    On October 23, 2023, EngageSmart and Vista issued the joint October 2023 Merger Press Release—which EngageSmart filed with the SEC as a "Current Report" on Form 8-K signed by Defendant Hudson and which was incorporated by reference into the Proxy—entitled *EngageSmart Agrees to Be Acquired by Vista Equity Partners for $4.0 Billion*.  The October 2023 Merger Press Release represented that the Merger was purportedly the result of a deliberative

process by the purportedly "independent" Special Committee, advised by the committee's purportedly "independent" financial advisors:

> A special committee of EngageSmart's Board of Directors comprised of independent directors [] advised by independent legal and financial advisors, was formed to conduct a deliberate and thoughtful process to evaluate this proposal and other potential value creation opportunities for EngageSmart.

145. This statement contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because the Special Committee was not truly independent, rather Defendant Hamilton was beholden to Summit, the Special Committee was formed as a pretext to rubberstamp the Merger driven and wanted by General Atlantic, and Evercore was conflicted and not independent.

146. The October 2023 Merger Press Release also represented that the Special Committee led the negotiations and, only after its recommendation, did the Board Defendants take action:

> Transaction negotiations were led by the Special Committee and following its unanimous recommendation, the EngageSmart Board of Directors unanimously approved the merger agreement with Vista and agreed to recommend that EngageSmart stockholders vote to adopt the merger agreement.

147. This statement contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because the Special Committee did not lead the negotiations, which were led and driven by General Atlantic and Goldman Sachs for General Atlantic's benefit, and the Special Committee's recommendation was a rubberstamp of the Merger driven by and wanted by General Atlantic and EngageSmart's conflicted Board.

148.     The October 2023 Merger Press Release also emphasized that the Merger Agreement contained a 30-day go-shop that purportedly "permits the Special Committee and its financial advisors to solicit and consider alternative acquisition proposals."

149.     This statement omitted material facts necessary to make the statement not false or misleading because, while the Merger Agreement contained a 30-day go-shop, the process was controlled by General Atlantic and Goldman Sachs, who favored Vista throughout the process.

150.     Director Defendant Stamas, who was designated to the Board by General Atlantic and identified in the October 2023 Merger Press Release as a "Managing Director and Global Head of General Atlantic's Financial Services sector," stated that "[w]e believe this transaction is compelling for stockholders" while thanking EngageSmart and Defendant Bennett for their "ongoing collaboration" with General Atlantic.

151.     This statement contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because the Merger—rather than being "compelling for stockholders"—mostly benefitted General Atlantic in ways it did not benefit Unaffiliated Stockholders and, rather than a "collaboration," General Atlantic had dictated and dominated the sales process.

**B.     False or Misleading Statements or Omissions of Material Facts in the November 2023 Go-Shop Press Release**

152.     On November 23, 2023, EngageSmart issued the November 2023 Go-Shop Press Release—which EngageSmart filed with the SEC as a preliminary communication on Schedule 14A in advance of the Proxy—entitled *EngageSmart Announces Expiration of "Go-Shop" Period*. The press release stated that EngageSmart had received no alternative proposals for a transaction:

> Pursuant to the definitive merger agreement, EngageSmart and its representatives had the right to solicit and consider alternative acquisition proposals from third parties during the "go-shop" period.

> EngageSmart did not receive any alternative acquisition proposals from any third party during the "go-shop" period.

153.    While perhaps technically true, this statement omitted material facts necessary to make the statement not false or misleading because the process of conducting the go-shop and dictating the dissemination of information to potential counterparties was controlled by General Atlantic and Goldman Sachs, who favored Vista throughout the process, and that prospective counterparties were not informed that a potential change of control transaction was available versus a transaction where General Atlantic retained control or, at very least, would rollover certain of its equity.

### C.    False or Misleading Statements or Omissions of Material Facts in the December 19, 2023 Definitive Proxy

154.    On December 19, 2023 EngageSmart issued the Proxy.  In the Proxy, in addition to statements by the EngageSmart Defendants, the Proxy acknowledged that General Atlantic and Vista each may be "deemed to be an affiliate of EngageSmart" under SEC rules and those entities made specific representations.

155.    As set forth below, the Proxy contained false or misleading statements of material facts by Defendants or omitted material facts necessary in to make the statements in the Proxy materials not false or misleading concerning the conflicted sales process, including: (i) the Special Committee's lack of independence from General Atlantic, Summit and the EngageSmart Board; (ii) Evercore's conflicts of interests between their representation of the Special Committee and pecuniary interests in facilitating the Merger and securing future retentions by General Atlantic, Summit and Vista; (iii) General Atlantic's domination and interference in the sale and go-shop process and preferential treatment of Vista versus other potential bidders; (iv) the overall conflicts that rendered the sales process inadequate; and (v) ultimately, as a result of all of the foregoing,

the unfairness of the Merger to the Unaffiliated Shareholders and the inability of Unaffiliated Shareholders and Class Members to evaluate the Merger.

> ### 1. False and Misleading Statements or Omissions of Material Facts Concerning the Special Committee's Recommendation

156. Similarly to the October 2023 Merger Press Release, the Proxy represented that the Special Committee was "comprised solely of members of the EngageSmart Board who were determined by the EngageSmart Board to be independent of General Atlantic." The Proxy likewise represented that the Special Committee's financial advisors were "independent."

157. This statement contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because the Special Committee was not truly independent and Evercore was conflicted and not independent.

158. The Proxy also represented that the Special Committee conducted a careful, independent evaluation of the Merger and determined it was fair and in the best interests of Unaffiliated Stockholders:

> The Special Committee, as more fully described in the enclosed proxy statement, evaluated the Merger, with the assistance of its own independent financial and legal advisors. At the conclusion of its review, the Special Committee, among other things, unanimously [] determined that the Merger Agreement and the transactions contemplated thereby, including the Merger, are advisable, fair to, and in the best interests of EngageSmart and the Unaffiliated Stockholders . . .

159. This statement contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because the Special Committee was not truly independent, Evercore was conflicted and not independent, and the Merger, which benefitted General Atlantic in ways it did not benefit Unaffiliated Stockholders, was neither fair nor in the best interests of Unaffiliated Stockholders. The failure to describe Evercore's deep conflicts of interest clearly misled investors into believing Evercore was

effectively without conflicts, and that they were unbiased and stood behind the transaction, therefore giving investors no reason to question the value-related statements and financial information and opinions in the Proxy.

160.    Under a heading concerning the ***Recommendation of the Special Committee*** in favor of the Merger, the Proxy listed the factors the Special Committee purportedly considered in resolving to "recommend that the Unaffiliated Stockholders adopt the Merger Agreement," including the:

- "Special Committee's process, together with its and EngageSmart's advisors, for soliciting and responding to offers from potential counterparties in an effort to obtain the best value reasonably available to the unaffiliated security holders;"

- "[F]act that since October 4, 2023, the date of media reports that EngageSmart was exploring a potential transaction, any prospective investor that was interested in exploring a transaction with EngageSmart, including a take private transaction to acquire control of EngageSmart, had the opportunity to submit a proposal for such a transaction;"

- "Merger Agreement contains a go-shop provision, which allowed the Special Committee to solicit the parties previously involved in the process and additional parties to determine interest in a transaction for control of EngageSmart during the Go-Shop Period;"

- "Special Committee selected and engaged its own independent legal and financial advisors and received the advice of such advisors throughout its review, evaluation and negotiation of a potential acquisition of EngageSmart, which independent financial advisor delivered a fairness opinion to the Special Committee;" and

- "Opinion of Evercore rendered to the Special Committee on October 23, 2023 . . . that as of the date of such opinion and based upon and subject to the assumptions, limitations, qualifications and conditions described in Evercore's written opinion, the Per Share Price to be received by [Unaffiliated Stockholders] in the Merger was fair, from a financial point of view, to such holders."

161.    These statements contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because:

- The Special Committee's purported process for soliciting and responding to offers from potential counterparties was in fact directed and dictated by General Atlantic, which favored and provided preferential treatment and information to Vista;

- Potential counterparties were not made aware prior to the Merger announcement that General Atlantic was willing to consider a change of control transaction;

- The go-shop process and dissemination of information to potential counterparties was controlled by General Atlantic and EngageSmart's conflicted Board, who favored Vista throughout the process; and

- Evercore was conflicted and not independent and its fairness opinion was driven by the substantial financial incentive to have any transaction consummated.

162.     Ultimately, the foregoing material misstatements and omissions of material facts in the Proxy deprived EngageSmart's Unaffiliated Stockholders of a fully informed vote on the Merger.

## 2. False and Misleading Statements or Omissions of Material Facts Concerning the EngageSmart Board's Recommendation

163.     Similarly to the section concerning the Special Committee's recommendation, under a heading concerning the ***Recommendation of the EngageSmart Board*** in favor of the Merger, the Proxy listed the factors the EngageSmart Board putatively considered in resolving to "recommend that EngageSmart's stockholders adopt the Merger Agreement," including the:

- "Special Committee's analysis (as to both substantive and procedural aspects of the Merger), conclusions and unanimous determination, which the EngageSmart Board adopted, that the Merger Agreement and the transactions contemplated thereby, including the Merger, are advisable, fair to, and in the best interests of EngageSmart and the Unaffiliated Stockholders;" and

- "[P]rocedural fairness of the Merger, including that (1) it was negotiated by the Special Committee consisting solely of independent (for purposes of serving on the Special Committee) and disinterested directors . . .; and (2) the Special Committee had the authority to select and engage, and was advised by, its own independent legal and financial advisors."

164.     These statements contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because the Special Committee's purported negotiation of the Merger and other processes for concluding that the Merger was "advisable, fair to, and in the best interests of . . . the Unaffiliated Stockholders" was hopelessly conflicted by the dominance of General Atlantic, the interference of the conflicted EngageSmart Board, and the conflicts inherent in the position of Evercore.  In addition, the failure to describe Goldman Sachs' deep conflicts of interest clearly misled investors into believing Goldman Sachs was effectively without conflicts, and that they were unbiased and stood behind the transaction, therefore giving investors no reason to question the value-related statements and financial information and opinions in the Proxy.

165.     Ultimately, the foregoing material misstatements and omissions of material facts in the Proxy deprived EngageSmart's Unaffiliated Stockholders of a fully informed vote on the Merger.

### 3.     False and Misleading Statements or Omissions of Material Facts Concerning the Position of General Atlantic and Vista

166.     Under a heading concerning the ***Position of the Purchaser Filing Parties as to the Fairness of the Merger***, Vista and its affiliates and General Atlantic and its affiliates listed the factors they considered causing them to "believe that the Merger is substantively fair to the unaffiliated security holders of EngageSmart," including the facts that:

- "[T]he Special Committee unanimously determined that the Merger Agreement and the transactions contemplated thereby, including the Merger, are advisable, fair to, and in the best interests of, EngageSmart and the Unaffiliated Stockholders;"

- "[T]he EngageSmart Board, acting upon the recommendation of the Special Committee, unanimously determined that the Merger Agreement and the transactions contemplated thereby, including the Merger, are advisable, fair to, and in the best interests of, EngageSmart and its stockholders;"

- "[C]onsideration and negotiation of the Merger Agreement were conducted under the control and supervision of the Special Committee, which consists solely of independent directors, each of whom is an outside, non-employee director not affiliated with any of the Purchaser Filing Parties;"

- "[A]all of the members of the Special Committee, were and are independent directors and not affiliated with any Purchaser Filing Party; in addition, none of such Special Committee members is or ever was an employee of EngageSmart or any of its subsidiaries or affiliates;"

- "[T]he Special Committee retained, and had the benefit of advice from, nationally recognized legal and financial advisors;" and

- "EngageSmart purportedly had the "ability to, for a period of 30 days after entering into the Merger Agreement, solicit, initiate, propose or induce the making, submission or announcement of, or knowingly encourage, facilitate or assist, any proposal or inquiry that constitutes, or is reasonably expected to lead to [a Merger] Proposal."

167.    These statements contained false and misleading statements of material facts and

omitted material facts necessary to make the statement not false or misleading because:

- The Special Committee's recommendation and conclusion on the Merger's fairness was the result of conflicted and deficient analyses and sales process as set for the above in Section III.C.1, above;

- The EngageSmart Boards' recommendation and conclusion on the Merger's fairness was the result of conflicted and deficient sales process as set for the above in Section III.C.2, above;

- The negotiations were led and driven by General Atlantic, Goldman Sachs, and EngageSmart's conflicted Board;

- Evercore was conflicted and not independent and its fairness opinion was driven by its conflicts and the substantial financial incentive to have any transaction consummated; and

- The Special Committee's purported process for soliciting and responding to offers from potential counterparties was in fact directed and dictated by General Atlantic, which favored and provided preferential treatment and information to Vista.

168.    Ultimately, the foregoing material misstatements and omissions of material facts in

the Proxy deprived Unaffiliated Stockholders of a fully informed vote on the Merger.

**D. False or Misleading Statements or Omissions of Material Facts in the December 12, 2023 Schedule 13E-3 by EngageSmart, General Atlantic and Vista**

169.     Also on December 19, 2023, EngageSmart, General Atlantic and Vista jointly issued a Schedule 13E-3 for the Merger.  The filing repeated Defendants' prior statements about the sales process for the Merger, including that:

- The Special Committee was comprised solely of "independent and disinterested directors" represented "independent financial and legal advisors;"

- "After careful consideration, the Special Committee . . . determined that the Merger Agreement and the transactions contemplated thereby, including the Merger, [were] advisable, fair to, and in the best interests of EngageSmart and the Unaffiliated Stockholders;" and

- "The Board, acting upon the recommendation of the Special Committee, unanimously [] determined that the Merger Agreement and the transactions contemplated thereby, including the Merger, [were] advisable, fair to, and in the best interests of EngageSmart and its stockholders."

170.     These statements contained false and misleading statements of material facts and omitted material facts necessary to make the statement not false or misleading because:

- the Special Committee was not truly independent, Evercore was conflicted and not independent, and the Special Committee was formed as a pretext to rubberstamp the Vista Merger driven by General Atlantic and EngageSmart's conflicted Board;

- the Special Committee's recommendation and conclusion on the Merger's fairness was the result of conflicted and deficient analyses and sales process as set for the above in Section III.C.1, above; and

- the EngageSmart Boards' recommendation and conclusion on the Merger's fairness was the result of conflicted and deficient analyses and sales process as set for the above in Section III.C.2, above;

171.     In sum, Defendants issued the Proxy and related SEC filings containing false or misleading statements or omitted material facts concerning: (i) the Special Committee's lack of independence from the Board, General Atlantic and Vista; (ii) Evercore's conflicts; (iii) General

Atlantic's interference with the sales process and preferential treatment of Vista versus other potential bidders; (iv) the conflicted sales process; and (v) ultimately, as a result of the foregoing, the unfairness of the Merger to the Unaffiliated Shareholders.

## IV.     ALLEGATIONS OF SCIENTER

172.     For purposes of Count II below, as alleged herein, the EngageSmart Defendants Special Committee Defendants, Board Defendants and Officer Defendants acted with scienter in that they knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of EngageSmart during the Class Period and detailed in Section III above were materially false and misleading.  The EngageSmart Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of those statements as primary violators of the federal securities laws.

173.     As set forth herein, the EngageSmart Defendants, by virtue of their receipt of information reflecting the true facts regarding EngageSmart and the sales process leading to the Merger, their control over, receipt and/or modification of EngageSmart's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning EngageSmart and the EngageSmart sales process, participated in the fraudulent scheme alleged herein.

174.     In their roles as directors and officers of the Company during the sales process and Class Period, the Special Committee Defendants, Board Defendants and Officer Defendants directly participated in the management of EngageSmart's operations and, because of their positions at EngageSmart, were involved in the drafting, reviewing, publishing and/or disseminating of the materially false and misleading statements and information alleged herein, and possessed the power and authority to control the contents of EngageSmart press releases and Proxy in connection with the Merger.

175. The EngageSmart Defendants also knowingly allowed the EngageSmart Board and General Atlantic to direct the sales process away from strategic acquirors, to ensure that General Atlantic and Vista would complete the Merger and ensure that the conflicted Board Defendants, through their interests in General Atlantic, would receive benefits from the Merger.

176. EngageSmart acted with scienter because the scienter of its Special Committee Defendants, Board Defendants and Officer Defendants is imputed to the Company. Those Defendants spoke on behalf of and controlled false and misleading materials disseminated concerning the Merger.

## V. LOSS CAUSATION

177. As described herein, Defendants made or caused to be made materially false and misleading statements and omissions of material facts in the Proxy. These materially false and misleading statements and omissions as set forth above caused Plaintiffs and other members of the Class to accept Merger consideration that failed to adequately value EngageSmart common stock. As a result, Plaintiffs and other Class Members suffered damages under Section 14(a) of the Exchange Act.

178. As described above, Vista would have paid more for EngageSmart. *First,* preceding the announcement of the Merger, Vista's Investment Committee authorized Vista to pay up to ██ ██████ for EngageSmart. *Second,* Vista could have paid even more than ████████ and still meet its target returns. *Third,* Vista significantly accelerated the Company's planned timeline to block out any other bidders. *Finally,* Vista was able to parlay its knowledge of sales process, limited bidders and General Atlantic's desire to retain an interest in the Company to minimize the price paid to Unaffiliated Stockholders and General Atlantic was not motivated to press for the maximum Vista would pay because of the significant non-ratable benefits General Atlantic received.

179.     During the Class Period, the EngageSmart Defendants also made materially false and misleading statements and omissions and engaged in a scheme to deceive investors.  The EngageSmart Defendants' materially false and misleading statements and omissions of material facts operated as a fraud or deceit on Plaintiffs and the Class, and induced Plaintiffs and the Class to sell EngageSmart shares at prices that were below the actual value of those securities, including by selling their shares into the Merger for the inadequate Merger Consideration, and thereby caused damage to Plaintiffs and the Class.  As a result of their sales of EngageSmart common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under Section 10(b) of the Exchange Act.

## VI.     INAPPLICABILITY OF STATUTORY SAFE HARBOR

180.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements alleged in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Further, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by a director or officer of the Company who knew that the statement was false when made.

## VII.    CLASS ACTION ALLEGATIONS

181.    Plaintiffs bring this action on their own behalf and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of Unaffiliated Stockholders entitled to vote on the Merger and the Class consisting of sellers of EngageSmart common stock from October 23, 2023 through the close of the Merger on January 26, 2024, including those stockholders who sold shares in the Merger.  Excluded from the Class are the Defendants and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

182.    This action is properly maintainable as a class action.

183.    The Class is so numerous that joinder of all members is impracticable.  According to the Proxy, there were 168,334,721 shares of EngageSmart common stock outstanding as of December 7, 2023.  Upon information and belief, there are hundreds or thousands of members of the Class.

184.    There are questions of law and fact that are common to the Class, including, among others:

(a)    Whether Defendants violated Section 14(a) of the Exchange Act and/or Rule 14a-9 promulgated thereunder;

(b)    Whether EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants violated Section 20(b) of the Exchange Act and/or Rule 10b-5 promulgated thereunder;

(b)    Whether the Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic violated Section 20(a) of the Exchange Act;

(c)    Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)    Whether Defendants' conduct caused the members of the Class to sustain damages; and

(g)     The extent of damage sustained by Class Members and the appropriate measure of damages.

185.     Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class have been damaged by Defendants' wrongful conduct.

186.     Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation.  Plaintiffs have no interests that conflict with those of the Class.  All members of the Class have suffered the same harm.

187.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the parties opposing the Class.  Conflicting adjudications for individual members of the Class might be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.  Therefore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

188.     The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## VIII.     PRESUMPTION OF RELIANCE

189.     Plaintiffs and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated in part upon material omissions of fact that Defendants had a duty to disclose.  Because this action involves Defendants' failure to disclose information regarding EngageSmart's business and sales process, among other things, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material such that a

reasonable investor might have considered them important in making investment decisions. Given the importance of Defendants' material misstatements and omissions of material facts set forth above, that requirement is satisfied here.

190. In the alternative, Plaintiffs and the Class are entitled to a presumption of reliance on Defendants' material misrepresentations and omissions of material facts pursuant to the fraud-on-the market doctrine because, at all relevant times, the market for EngageSmart securities was open, efficient and well developed for the following reasons, among others:

(a) EngageSmart was listed and actively traded on the NYSE, a highly efficient market;

(b) As a regulated issuer, EngageSmart filed periodic public reports with the SEC and/or the NYSE;

(c) The price of EngageSmart common stock reacted to the announcement of the Merger and remained near the estimated per share Merger Consideration during the Class Period;

(d) EngageSmart regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(e) EngageSmart was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

## <u>COUNT I</u>
**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

191. Plaintiffs repeat and re-allege the allegation set forth in Paragraphs 1 through 190 as if fully set forth herein.

192. Defendants disseminated a false and misleading Proxy containing statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, and in light of the circumstances

under which they were made, misrepresented or omitted material facts necessary to make the statements therein not materially false or misleading.

193.    The Proxy was prepared, reviewed and/or disseminated by Defendants.  Each of the Defendants authorized the dissemination of the Proxy, the use of their names in the Proxy and were involved in the sales process leading up to the signing of the Merger Agreement.  By virtue of their positions within EngageSmart and/or access to Company and Merger information, these Defendants were aware of the misstated and omitted information alleged herein and their duty to make accurate statements and disclose all material information in the Proxy.

194.    Defendants were negligent in issuing a false and misleading Proxy.  Count I is not based on any knowing or reckless misconduct on the part of the Defendants.  Count I does not depend, and the relevant facts do not allege, wrongdoing that sounds in fraud. Count I is premised on the fact that there were material misrepresentations and omissions in the Proxy, and the Defendants were negligent in failing to recognize this fact.

195.    Plaintiffs, while reserving all rights, expressly disclaim and disavow at this time any allegation that could be construed as alleging that this claim sounds in fraud against Defendants in connection with this Count.  This claim sounds in negligence and is based on Defendants' failure to exercise reasonable care to ensure the Proxy did not contain the material misstatements and omissions alleged herein.

196.    The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would have considered them important in deciding how to vote on the Merger.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to EngageSmart shareholders.

197. The Proxy was an essential link in causing EngageSmart shareholders to approve the Merger.

198. By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

199. Because of the false and misleading statements in the Proxy, Plaintiff and the Class were harmed by an uninformed shareholder vote approving the Merger.

200. This claim is brought within the applicable statute of limitations.

## COUNT II
**Against the EngageSmart Defendants for Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

201. Plaintiffs repeat and re-allege all allegations contained above as if fully set forth herein.

202. During the Class Period, EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class Members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to sell EngageSmart securities at artificially deflated prices.

203. EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts and/or omitted material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business that operated as a fraud and deceit upon the sellers of the Company's securities in an effort to maintain artificially low market prices for EngageSmart securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

204. EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal material information about the Company's financial well-being, operations and prospects, as well as material information concerning the Merger and the sales process.

205. During the Class Period, EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

206. EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to falsely misrepresent EngageSmart's true financial condition and material information regarding the Merger and the sales process from the investing public and to support the artificially low prices of the Company's securities.

207. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective sales of the Company's securities during the Class Period.

208. By virtue of the foregoing, the EngageSmart Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT III
**Against the The Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic for Violations of Section 20(a) of the Exchange Act**

209.     Plaintiffs repeat and re-allege all allegations contained above as if fully set forth herein.

210.     Defendants disseminated false and misleading statements and a false and misleading Proxy in violation of Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5 and 14a-9, promulgated thereunder.

211.     The Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic acted as controlling persons of EngageSmart and culpably participated in the Exchange Act violations within the meaning of Section 20(a) of the Exchange Act as alleged herein.  In particular, each of the Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic had direct and supervisory involvement in the day-to-day operations of EngageSmart, and, therefore, had the power to control or influence the particular transaction giving rise to the Exchange Act violations alleged herein, and exercised the same. These Defendants were involved in negotiating, reviewing and approving the Merger Agreement. The statements and the Proxy purport to describe the various issues and information that these Defendants reviewed and considered before recommending the Merger to the Class.

212.     These Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.  The Proxy also expressly stated that it was issued "By Order of the Board of Directors," and was signed by Defendant Stamas as Chairman of the Board of Directors.

213.     The Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic had the ability to exercise control over and did control a person(s) who has

violated Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5 and 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the conduct, Plaintiffs and the Class were harmed by selling their shares at deflated prices and by an uninformed shareholder vote approving the Merger.

214. By virtue of the foregoing, the Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic have violated Section 20(a) of the Exchange Act.

215. This claim is brought within the applicable statute of limitations.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Determining that all Defendants violated Section 14(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

C. Determining that EngageSmart, the Special Committee Defendants, Board Defendants and Officer Defendants violated Section 10(b) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder;

D. Determining that the Special Committee Defendants, Board Defendants, Officer Defendants and General Atlantic violated Sections 20(a) of the Exchange Act;

E. Awarding damages in favor of Plaintiffs and the Class against all Defendants, jointly and severally, for all damages sustained due to Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

F. Awarding restitution and equitable relief to Plaintiffs and the Class;

G. Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

H. Awarding Plaintiffs pre- and post-judgment interest and the costs of this action, including reasonable allowance for Plaintiffs' attorneys' and experts' fees; and

I. Granting such other and further relief as this Court may deem just and proper.

## X.        JURY DEMAND

Plaintiffs respectfully request a trial by jury on all issues so triable.


Dated: September 27, 2024                              Respectfully submitted,

                                                      **FARNAN LLP**

**ENTWISTLE & CAPPUCCI LLP**                          /s/ Michael J. Farnan
Vincent   R.   Cappucci   (*pro   hac   vice*         Brian E. Farnan (Bar No. 4089)
*forthcoming*)                                        Michael J. Farnan (Bar No. 5165)
230 Park Avenue, 3rd Floor                            919 North Market Street, 12th Floor
New York, New York 10169                              Wilmington, DE 19801
Telephone:  (212) 894-7200                            Telephone: (302) 777-0300
Facsimile:  (212) 894-7272                            Facsimile: (302) 777-0301
Email:  vcappucci@entwistle-law.com                   bfarnan@farnanlaw.com
                                                      mfarnan@farnanlaw.com

                                                      *Counsel for Plaintiffs AltShares Event-Driven
                                                      ETF and The Arbitrage Fund*

## **CERTIFICATION**

I, Jonathon Hickey, on behalf of AltShares Event-Driven ETF and The Arbitrage Fund (together, "The Water Island Funds"), hereby certify, as to the claims asserted under the federal securities laws in the Class Action Complaint (the "Complaint"), that:

1.     I am the Chief Operating Officer of Water Island Capital, LLC, the investment advisor to The Water Island Funds.  I have reviewed the Complaint to be filed in this action and have authorized its filing by counsel.

2.     The Water Island Funds did not acquire any of the securities that are the subject of this action at the direction of their counsel or in order to participate in this action or any other litigation under the federal securities laws.

3.     The Water Island Funds are willing to serve as Lead Plaintiffs in this action and recognize their duty as such to act on behalf of class members in monitoring and directing the action, and, if necessary, testifying at deposition and trial.

4.     The Water Island Funds will not accept any payment for serving as representative parties on behalf of the class beyond their *pro rata* share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the Court.

5.     The Water Island Funds have not served or sought to serve as representative parties for a class in any action filed under the federal securities laws within the three-year period prior to the date of this Certification except in: *The Arbitrage Fund v. The Toronto-Dominion Bank*, No. 1:23-cv-02763-RBK (D.N.J. July 21, 2023); *Water Island Merger Arbitrage Institutional Commingled Master Fund, LP v. Cornerstone Building Brands, Inc.*, No. 1:23-cv-00701-CFC (D. Del. Aug. 28, 2023) (The Arbitrage Fund); and *In re Focus Financial Partners Inc. Securities Litigation*, No. 1:23-cv-01466-MN (D. Del. Mar. 4, 2024) (AltShares Event-Driven ETF).

6.     The Water Island Funds' transactions during the relevant period in EngageSmart, Inc. securities that are the subject of this action are reflected in Schedule A hereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of September 2024

The Water Island Funds
By: Jonathon Hickey
Chief Operating Officer of Water Island Capital, LLC, investment advisor to The Water Island Funds

**Schedule A**

**Transactions October 23, 2023 - January 26, 2024 (Close of Merger)**
**EngageSmart, Inc. Common Stock (Ticker: ESMT)**

| Fund | Transaction | Trade Date | Price | Shares | Note |
|------|-------------|-----------|-------|--------|------|
| The Arbitrage Fund | Purchase | 10/23/2023 | $ 22.6159 | 161,306 | |
| The Arbitrage Fund | Purchase | 10/23/2023 | $ 22.6067 | 143,383 | |
| The Arbitrage Fund | Purchase | 10/23/2023 | $ 22.6089 | 143,383 | |
| The Arbitrage Fund | Purchase | 11/13/2023 | $ 22.8360 | 112,030 | |
| The Arbitrage Fund | Purchase | 11/14/2023 | $ 22.8500 | 2,970 | |
| The Arbitrage Fund | Purchase | 12/19/2023 | $ 22.9149 | 100,000 | |
| The Arbitrage Fund | Purchase | 12/19/2023 | $ 22.9150 | 100,000 | |
| The Arbitrage Fund | Sale - Close of Merger | | $ 23.0000 | 763,072 | At Merger Consideration |
| | | | | | |
| AltShares Event-Driven Fund | Purchase | 10/23/2023 | $ 22.5480 | 2,000 | |
| AltShares Event-Driven Fund | Purchase | 12/19/2023 | $ 22.8900 | 65 | |
| AltShares Event-Driven Fund | Purchase | 1/5/2024 | $ 22.9300 | 325 | |
| AltShares Event-Driven Fund | Sale - Close of Merger | | $ 23.0000 | 2,390 | At Merger Consideration |

**Shares Held as of 12/21/2023 Record Date**
**EngageSmart, Inc. Common Stock (Ticker: ESMT)**

| | |
|---|---|
| The Arbitrage Fund | 763,072 |
| AltShares Event-Driven Fund | 2,065 |