## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| ALTSHARES EVENT-DRIVEN ETF and THE ARBITRAGE FUND, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>ENGAGESMART, INC., ROBERT P. BENNETT, DEBORAH A. DUNNAM, MATTHEW G. HAMILTON, CASSANDRA HUDSON, DAVID MANGUM, PRESTON MCKENZIE, RAPH OSNOSS, DIEGO RODRIGUEZ, PAUL G. STAMAS, SCOTT SEMEL, GENERAL ATLANTIC, L.P. and VISTA EQUITY PARTNERS MANAGEMENT, LLC,<br><br>　　　　　　　Defendants. | Case No. 24-cv-1083-RGA<br><br><br>CLASS ACTION |

## OPENING BRIEF IN SUPPORT OF THE MOTION OF THE ENGAGESMART INVESTORS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

**Dated: December 9, 2024**

**FARNAN LLP**
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Liaison Counsel for Proposed Lead Plaintiff the EngageSmart Investors and Proposed Liaison Counsel for the Class*

[Additional counsel listed on signature block]

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS .........................................................................3

SUMMARY OF THE ARGUMENT .........................................................................................4

ARGUMENT ...............................................................................................................................6

I.  The EngageSmart Investors Are The Most Adequate Plaintiff ...........................................6

    A.  The EngageSmart Investors' Motion is Timely..........................................................8

    B.  The EngageSmart Investors Believe They Have the Largest Financial
        Interest in the Relief Sought by the Class..................................................................8

    C.  The EngageSmart Investors Satisfy Rule 23's Typicality and Adequacy
        Requirements ..............................................................................................................9

        1.  The EngageSmart Investors' Claims Are Typical of Those of the Class ....9

        2.  The EngageSmart Investors Will Fairly and Adequately Protect the
            Interests of the Class ..............................................................................10

        3.  The EngageSmart Investors Are The Ideal Lead Plaintiff to Represent
            the Class .................................................................................................11

II.  The EngageSmart Investors' Selection of Counsel Should Be Approved.........................14

CONCLUSION..........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

*Arbitrage Fund v. Toronto-Dominion Bank*,
No. 23-cv-02763, 2023 WL 5550198 (D.N.J. Aug. 29, 2023) .................................................. 10

*Bardaji v. Match Group, Inc.*,
No. 23-245 (MN), 2023 WL 3624774 (D. Del. May 24, 2023) ................................................. 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................................ passim

*In re Resideo Technologies, Inc. Securities Litigation*,
No. 19-cv-02863 (WMW/BRT), 2022 WL 872909 (D. Minn. Mar. 24, 2022) ...................... 16

*Wigginton v. Advance Auto Parts, Inc.*,
No. 18-212 (MN), 2018 WL 5729733 (D. Del. Nov. 2, 2018) .................................... 10, 11, 14

**Statutes**

15 U.S.C. § 78j(b) ........................................................................................................... 1

15 U.S.C. § 78n(a) .......................................................................................................... 1

15 U.S.C. § 78t(a) ........................................................................................................... 1

15 U.S.C. § 78u-4(a) ............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................... 9, 10

**Regulations**

17 C.F.R. § 240.10b-5 ..................................................................................................... 1

17 C.F.R. § 240.14a-9 ..................................................................................................... 1

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 1995) .............. 11,12

The EngageSmart Investors[1] respectfully submit this opening brief in support of their motion for: (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), for a class (the "Class") of shareholders of EngageSmart, Inc. ("EngageSmart" or the "Company") as of the December 21, 2023 record date (the "Record Date") who were entitled to vote on the "take-private" acquisition of EngageSmart (the "Merger" or the "Transaction") by Vista Equity Partners Management, LLC (together with its affiliates, "Vista"), and all persons or entities, excluding Defendants (defined below), who sold shares of EngageSmart common stock from October 23, 2023, the announcement date of the Merger, through the close of the Merger on January 26, 2024 (the "Class Period"), including investors who sold their shares of EngageSmart common stock into the Merger and were damaged thereby; (2) approval of their selection of Saxena White P.A. ("Saxena White") and Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Lead Counsel, and Farnan LLP ("Farnan") as Liaison Counsel, for the Class; and (3) the award of any such other and further relief as the Court may deem just and proper.

## **INTRODUCTION**

This is a securities class action lawsuit (the "Action") brought pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rules 10b-5, 17 C.F.R. § 240.10b-5, and 14a-9, 17 C.F.R. § 240.14a-9, against: (i) EngageSmart; (ii) the Company's board of directors (the "EngageSmart

---

[1] The EngageSmart Investors consist of: AltShares Event-Driven ETF, The Arbitrage Fund (together with AltShares Event-Driven ETF, the "Water Island Funds") and the Hilary L. Shane Revocable Trust (the "HLS Trust," and together with the Water Island Funds, the "EngageSmart Investors").

Board"); (iii) the special committee purportedly established to evaluate the Merger (the "Special Committee"); (iv) certain Company executives (the "Officers"); (v) General Atlantic, L.P. and its affiliates ("General Atlantic"); and (vi) Vista (all together, the "Defendants").

The PSLRA directs the Court to appoint as Lead Plaintiff the "most adequate plaintiff," *i.e.*, the movant that has demonstrated the "largest financial interest" in the litigation and has also made a prima facie showing that it meets the typicality and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).

The EngageSmart Investors respectfully submit that they are the presumptively "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. The EngageSmart Investors' motion is timely and their collective holdings of 1,761,806 shares of EngageSmart common stock as of the Record Date, and Class Period shares sold and shares tendered in the Merger totaling 3,188,524 shares of EngageSmart common stock, represent the largest known financial interest in the relief sought by the Class.[2] The EngageSmart Investors readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class and because they will fairly and adequately represent the Class. The EngageSmart Investors are also an ideal Lead Plaintiff to represent the Class, as they include sophisticated institutions with significant experience investing in publicly traded securities, and all three members have experience serving in a leadership role in other complex securities litigation matters. In the present

---

[2] *See* Declaration of Michael J. Farnan in Support of the Motion of the EngageSmart Investors for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Farnan Decl."), Exs. A & B (certifications of the EngageSmart Investors and chart setting forth the EngageSmart Investors' Class Period transactions in EngageSmart common stock).

Action, the EngageSmart Investors have committed the resources necessary to vigorously pursue claims on behalf of the Class, and two of the EngageSmart Investors, AltShares Event-Driven ETF and The Arbitrage Fund, have been actively involved in this Action since its inception, including filing the initial complaint in this matter.

In addition, as set forth in greater detail in their Joint Declaration submitted herewith, the EngageSmart Investors fully understand the Lead Plaintiff's obligations under the PSLRA and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action. *See* Farnan Decl., Ex. C.

The EngageSmart Investors also have demonstrated their adequacy by retaining experienced and competent counsel to represent the Class. Saxena White and Entwistle & Cappucci have extensive experience in the successful prosecution of securities class actions throughout the country, and Entwistle & Cappucci has already taken affirmative steps to protect the interests of the Class by investigating Defendants' conduct and filing the operative complaint.

Accordingly, the EngageSmart Investors respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## NATURE AND STAGE OF PROCEEDINGS

Pending before this Court is a class action that asserts claims against Defendants under Sections 10(b), 14(a), and 20(a) of the Exchange Act and SEC Rules 10b-5 and 14a-9, on behalf of all shareholders of EngageSmart as of the Record Date who were entitled to vote on the Merger, and all persons or entities, excluding Defendants, who sold shares of EngageSmart common stock during the Class Period, including investors who sold their shares of EngageSmart common stock into the Merger and were damaged thereby. Entwistle & Cappucci published a notice on *BusinessWire* on October 8, 2024, alerting investors to the pendency of the Action and informing

them of the December 9, 2024 deadline for seeking appointment as Lead Plaintiff. *See* Farnan Decl., Ex. D.

## SUMMARY OF THE ARGUMENT

The PSLRA requires district courts to appoint the "most adequate plaintiff" as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). The EngageSmart Investors respectfully submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because they: (1) timely filed a motion; (2) to the best of their knowledge, have the largest financial interest in the relief sought by the Class; and (3) will fairly and adequately represent the interests of the Class. *See id.* § 78u-4(a)(3)(B)(iii)(I). The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). Accordingly, the EngageSmart Investors respectfully request that the Court approve their selection of Saxena White and Entwistle & Cappucci as Lead Counsel, and Farnan as Liaison Counsel, for the Class.

## STATEMENT OF FACTS

EngageSmart, located in Braintree, Massachusetts, provides vertically tailored customer engagement software and integrated payment solutions. D.I. 1 ¶ 49.[3] On September 27, 2021, EngageSmart completed its initial public offering (the "IPO") and began trading on the New York Stock Exchange under the ticker symbol "ESMT." *Id.* ¶¶ 27, 51. Following the IPO and until the Merger, General Atlantic and Summit Partners, L.P. ("Summit") owned at least 52% and 15% of the Company's common stock, respectively. *Id.* ¶ 52. Pursuant to the stockholder agreement executed in connection with the IPO (the "Stockholder Agreement")—and by satisfying the

---

[3] Pursuant to Court order, a redacted version of the complaint was filed on October 5, 2024. D.I. 9.

requisite over-50% and over-10% holdings requirements, respectively—General Atlantic was entitled to nominate five of eight EngageSmart directors, while Summit was entitled to nominate one director. *Id.* In addition, as long as General Atlantic owned at least 25% of EngageSmart common stock—which it did at all times from the IPO to the Merger—the Company could not engage in a merger or any other "Major Actions" without General Atlantic's consent. *Id.* ¶ 55.

On October 23, 2023, EngageSmart and Vista issued a press release (the "Merger Press Release") announcing that EngageSmart had agreed to be acquired by Vista in the take-private Merger for $23 per share as Merger consideration. *Id.* ¶ 5. On January 23, 2024, the Merger was approved by a shareholder vote. *Id.* ¶ 137. The Transaction closed on January 26, 2024, and EngageSmart was delisted. *Id.* ¶¶ 27, 181.

Prior to the shareholder vote, EngageSmart issued a press release on November 23, 2023 (the "Go-Shop Press Release"), which touted the Company's right to solicit and consider alternative acquisition offers from third parties during the "go-shop" period, but stated the Company did not receive any such offers. Less than a month later, Defendants issued a Definitive Proxy Statement on December 19, 2023 (the "Proxy"). *Id.* ¶¶ 7, 154.

In the Merger Press Release, the Go-Shop Press Release, as well as other filings leading up to and including the Proxy, Defendants assured investors that: (1) the Special Committee, formed to evaluate the Merger, and the Special Committee's financial advisor, Evercore Group L.L.C. ("Evercore"), were independent from the Company's Board of Directors, General Atlantic and Vista; (2) the go-shop process was designed to identify potential counterparties, resulting in the most favorable transaction for EngageSmart shareholders; (3) the sales process, including the go-shop process, enabled the Special Committee to conduct an independent evaluation of the available transactions and the Merger, allowing the Special Committee to recommend the Merger

to unaffiliated stockholders; and (4) the Merger was fair and in the best interests of EngageSmart public stockholders, which represented the best achievable value for their shares. *Id*. ¶¶ 4, 12.

The Merger Press Release, the Go-Shop Press Release, the Proxy and other filings connected to the Merger were false and misleading because they failed to disclose material facts concerning the Transaction, including that: (1) the two-person Special Committee (*i.e.*, Defendants Hamiliton and Rodriguez) was not independent, given Defendant Hamilton's dual fiduciary duties to EngageSmart as a director and Summit as a managing director, and given Defendant Rodriguez was originally recommended to serve on the board of EngageSmart by the Company's financial advisor, Goldman Sachs & Co., LLC; (2) Evercore, the retained financial advisor for the Special Committee, was conflicted due to prior relationships with General Atlantic and Summit and not entitled to compensation if EngageSmart remained a standalone company; and (3) the Company's dominant shareholder, General Atlantic—driven by a desire to obtain a more lucrative equity rollover into a private equity firm—preferred a transaction with Vista, and as a result, tainted EngageSmart's ability to receive counter offers during the go-shop process by informing bidders it would only support a minority investment. *Id*. ¶ 12.

As a result of these material misrepresentations and omissions, EngageSmart shareholders were misled into selling EngageSmart common stock during the Class Period and accepting consideration from the Merger at well below fair value and were injured thereby. *Id*. ¶¶ 143, 155, 171, 179.

## **ARGUMENT**

### I.    **THE ENGAGESMART INVESTORS ARE THE MOST ADEQUATE PLAINTIFF**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i). Within sixty days of the publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a member of the purported class and shall appoint as lead plaintiff the movant that the court determines to be most capable of adequately representing the interests of the entire class. *See id*. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the movant that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I). The "most adequate plaintiff" presumption may be rebutted only upon "proof" that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

Here, the EngageSmart Investors are the "most adequate plaintiff" because they: (1) timely moved for appointment as Lead Plaintiff; (2) possess, to their knowledge, the "largest financial

interest in the relief sought by the class;" and (3) "otherwise satisf[y] the requirements of Rule 23" for purposes of this Motion. *Id*. § 78u-4(a)(3)(B)(iii)(I).

### A.  The EngageSmart Investors' Motion is Timely

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the notice published on October 8, 2024, by EngageSmart Investors AltShares Event-Driven ETF and The Arbitrage Fund, and their counsel Entwistle & Cappucci, on *BusinessWire* alerted investors to the filing of the Action and the December 9, 2024 deadline for seeking appointment as Lead Plaintiff. *See* Farnan Decl., Ex. D. Thus, pursuant to the PSLRA, any member of the proposed Class may apply for appointment as Lead Plaintiff within 60 days of the publication of the notice, *i.e.*, on or before December 9, 2024. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Accordingly, the EngageSmart Investors have timely filed their motion to serve as Lead Plaintiff.

### B.  The EngageSmart Investors Believe They Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, the EngageSmart Investors collectively held 1,761,806 shares of EngageSmart common stock as of the Record Date for the Merger, sold 30,025 shares during the Class Period and tendered 3,158,499 shares into the Merger, incurring substantial losses as a result of Defendants' misconduct. *See* Farnan Decl., Exs. A & B. To the best of their knowledge, the EngageSmart Investors have the largest financial interest in this matter and are the presumptive "most adequate plaintiff." *See Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest

financial stake in the recovery sought by the class.") (internal quotation marks and citation omitted).

### C.    The EngageSmart Investors Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest known financial interest in the relief sought by the Class, the lead plaintiff must also satisfy the applicable requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a movant may serve as class representative if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  However, at the lead plaintiff stage, a movant need only make a "*prima facie* showing of typicality and adequacy."  *Cendant*, 264 F.3d at 263; *see also Bardaji v. Match Group, Inc.*, No. 23-cv-245, 2023 WL 3624774, at *2 (D. Del. May 24, 2023) ("At this stage, the Court's inquiry need not be extensive and should only consider whether the movant has stated a *prima facie* case of typicality and adequacy under Rule 23.") (internal quotation and citation omitted).

#### 1.    The EngageSmart Investors' Claims Are Typical of Those of the Class

The typicality requirement "consider[s] whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based."  *Cendant*, 264 F.3d at 265 (internal quotation marks and citations omitted; alterations in original).  The EngageSmart Investors satisfy the typicality requirement because, just like all other proposed

Class members, they: (1) held EngageSmart common stock on the Record Date; (2) sold EngageSmart common stock during the Class Period at prices that were artificially deflated by Defendants' false and misleading statements and omissions; (3) were misled into accepting consideration that was below fair value for their EngageSmart shares; and (4) suffered damages as a result. Thus, the EngageSmart Investors' claims arise from the same conduct as those of the other Class members, and the EngageSmart Investors are typical. *See Wigginton v. Advance Auto Parts, Inc.*, No. 18-cv-212, 2018 WL 5729733, at *4 (D. Del. Nov. 2, 2018) (finding that a lead plaintiff movant had satisfied the typicality requirement where its claims were "based on the same conduct and legal theories as the proposed class claims").

### 2. The EngageSmart Investors Will Fairly and Adequately Protect the Interests of the Class

The adequacy element of Rule 23 is satisfied where a movant establishes that it can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating whether a movant satisfies the adequacy requirement, courts consider whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265 (citations omitted; alterations in original); *see also Arbitrage Fund v. Toronto-Dominion Bank*, No. 23-cv-2763, 2023 WL 5550198, at *5 (D.N.J. Aug. 29, 2023) (finding adequacy requirement satisfied where a movant group demonstrated "the ability and incentive to represent the purported class vigorously" and had "obtained what this Court finds to be adequate counsel experienced in federal securities litigation").

The EngageSmart Investors will fairly and adequately represent the Class, given their substantial financial stake in the litigation and their interest in vigorously pursuing claims against Defendants, which aligns with the interests of other Class members that were similarly harmed as

a result of Defendants' false and/or misleading statements.  There is no potential conflict between the interests of the EngageSmart Investors and other members of the Class, and the EngageSmart Investors are fully committed to vigorously pursuing the claims on behalf of the Class.  *See Advance Auto Parts*, 2018 WL 5729733, at *4-5 (finding that a lead plaintiff movant had satisfied the adequacy requirement because it had "a clear incentive to pursue the present claims against Defendants vigorously," had "retained adequate counsel to represent the entire class" and there was "no evidence of any conflicts between [the movant's] claims and those of the proposed class").  As set forth below, the EngageSmart Investors have provided information about their backgrounds and affirmed their commitment to fulfilling the fiduciary role of Lead Plaintiff should they be appointed.

The EngageSmart Investors have also taken significant steps that demonstrate they will protect the interests of the Class, including the filing of the initial complaint by AltShares Event-Driven ETF and The Arbitrage Fund, and their publication of the PSLRA Notice on behalf of the Class.  Moreover, the EngageSmart Investors have retained competent and experienced counsel to prosecute these claims and to investigate further the facts giving rise to this Action.  The EngageSmart Investors' proposed Lead Counsel and Liaison Counsel are highly qualified, experienced in the prosecution of class actions involving federal and state securities law claims, and able to successfully conduct this complex litigation in a professional manner.  *See infra* Section II.  Indeed, Entwistle & Cappucci researched and filed the Action, thereby initiating this litigation and the Lead Plaintiff process.

### 3.    The EngageSmart Investors Are The Ideal Lead Plaintiff to Represent the Class

The EngageSmart Investors—which include the Water Island Funds, two institutional investors—also satisfy the PSLRA's goal of encouraging institutional investors to "take the reins"

in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 755 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions").  The EngageSmart Investors have the ability, resources, and incentive to vigorously represent the claims of the Class and supervise Class counsel.  *See* Farnan Decl., Ex. C ¶ 11.  Appointing the EngageSmart Investors as Lead Plaintiff for the Class would satisfy the PSLRA's aim of having the plaintiff class represented by institutional investors with a significant stake in the outcome of this litigation.

The EngageSmart Investors also understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action and have pledged to "provid[e] testimony at deposition and trial, if necessary."  Farnan Decl., Ex. A.  In their Joint Declaration, the EngageSmart Investors detail their backgrounds and their significant relevant experience in selecting and overseeing counsel in securities class actions.  Farnan Decl., Ex. C ¶¶ 2-10.  The Joint Declaration also explains how and why the EngageSmart Investors decided to collaborate in this litigation.  Specifically, before seeking Lead Plaintiff appointment, the EngageSmart Investors considered the merits of the claims against Defendants, their losses caused by Defendants' wrongdoing and their proposed litigation strategy.  *See id.* ¶¶ 11.  In addition to these considerations, the EngageSmart Investors each independently expressed an interest in seeking to cooperate with like-minded, sophisticated investors in seeking appointment as Lead Plaintiff.  *See id.* ¶¶ 11-12, 15.

Recognizing that this litigation will be best guided by institutional investors and principals who lead such investors that are familiar with and/or understand the requirements attendant upon a fiduciary, the EngageSmart Investors determined to join together to seek appointment as Lead

Plaintiff.  *See id.* ¶¶ 9-12.  Based on the EngageSmart Investors' understanding that working together would allow for the sharing of experiences and resources, they believed that partnering would add substantial value to the prosecution of this Action and would benefit the Class.  *See id.* ¶¶ 9, 16, 18.

As set forth in their Joint Declaration, the EngageSmart Investors have demonstrated their commitment to working cohesively in the prosecution of this Action.  *See id.* ¶¶ 13-17.  The Joint Declaration also details the steps that the EngageSmart Investors have already taken (and will continue to take) to ensure the vigorous prosecution of this Action and to oversee counsel.  *See id.* Specifically, before seeking appointment as Lead Plaintiff, representatives from the EngageSmart Investors convened and participated in a conference call and discussed together, among other things, the strengths of the claims against Defendants and their ability and incentive to vigorously represent the claims of the Class.  *See id.* ¶¶ 13-14.  The EngageSmart Investors understand the duties of a Lead Plaintiff pursuant to the PSLRA, including, among other things, the lead plaintiff process and the EngageSmart Investors' common goals and strategy for the joint prosecution of this litigation.  *See id.*  The collaboration of the EngageSmart Investors in this litigation follows their shared goals and interests in protecting and maximizing the assets of the EngageSmart Investors and the Class and ensuring the transparency of statements by public companies in connection with corporate events.  *See id.*  ¶¶ 7, 11, 15, 17.

In sum, the EngageSmart Investors have demonstrated their willingness, resources, and commitment to working closely with one another to supervise proposed counsel for the Class and obtain the best possible recovery for the Class.  Thus, the Class would benefit from the EngageSmart Investors' leadership of this litigation.

## II.    THE ENGAGESMART INVESTORS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 274 ("[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices."). Here, the EngageSmart Investors have selected and retained Saxena White and Entwistle & Cappucci to serve as Lead Counsel for the Class. The EngageSmart Investors' selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Advance Auto Parts*, 2018 WL 5729733, at *6 (finding "no basis . . . to disturb the PSLRA's 'strong presumption' in favor of a lead plaintiff's selection and retention of counsel"); *see also* Farnan Decl., Exs. E & F (Firm resumes of Saxena White and Entwistle & Cappucci). Saxena White and Entwistle & Cappucci currently serve as lead counsel together in three pending actions. *See Water Island Event-Driven Fund v. MaxLinear, Inc.*, No. 3:23-cv-01607 (S.D. Cal.); *In re Emisphere Techs., Inc.*, No. 2:23-cv-20898 (D.N.J.); and *Altshares Event-Driven ETF v. Focus Fin. Partners, Inc.*, No. 1:23-cv-01466 (D. Del.).

Saxena White has secured substantial recoveries on behalf of investor classes while serving as lead counsel in securities class actions throughout the country, including in this District, and maintains an office in this District. The firm's experience includes the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 1:10-cv-00990-ER (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 1:17-cv-00304-WJM-NRN (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-01395-TJC-JBT (M.D. Fla.); the $65 million recovery in *In re Apache Corp. Securities Litigation*, No. 4:21-cv-00575 (S.D. Tex.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Companies Inc.*, No. 0:18-cv-00871 (D. Minn.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953-PCP (N.D. Cal.) (pending

final approval); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 1:04-cv-07644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-cv-02587-ELR (N.D. Ga.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 3:21-cv-00444 (E.D. Va.); the $30 million recovery in *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 1:22-cv-10321 (D. Mass.) (pending final approval); the $28.5 million recovery in *In re FibroGen Inc. Securities Litigation*, No. 3:21-cv-02623 (N.D. Cal.); the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 2:20-cv-00856 (S.D. Ala.); and the $17.5 million recovery in *Teamsters Local 456 Pension Fund v. Universal Health Services Inc.*, No. 2:17-cv-02817 (E.D. Pa.). Moreover, Saxena White achieved a $240 million settlement together with significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement in history. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-ST (N.D. Cal.). Additionally, Saxena White achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme that included a sustained Section 14(a) claim for misleading statements made pursuant to a proxy statement, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-cv-04534 (S.D. Ohio). Furthermore, as a federally certified woman- and minority-owned firm specializing in representing institutional investors in securities litigation, Saxena White is deeply committed to the important goal of increasing diversity among class counsel.

As reflected in its firm resume, Entwistle & Cappucci also possesses extensive experience litigating securities class actions, having successfully prosecuted some of the largest and highest-profile securities class actions in history (*See* Farnan Decl., Ex. F). Entwistle & Cappucci has

distinguished itself as one of the nation's premier complex litigation firms, and currently serves as Lead Counsel in numerous high-profile securities class actions pending throughout the country.

Entwistle & Cappucci's recent successes include *In re Resideo Technologies, Inc. Securities Litigation*, No. 19-cv-02863, 2022 WL 872909 (D. Minn. Mar. 24, 2022) in which the firm served as court-appointed co-lead counsel on behalf of a class of common stock investors in Resideo Technologies, Inc.  The complaint was brought by institutional investor plaintiffs and asserted claims under Sections 10(b) and 20(a) of the Exchange Act.  After defeating defendants' motion to dismiss the complaint, the firm reached a court-approved settlement of $55 million on behalf of the investor class.  Additional cases in which Entwistle & Cappucci has served in a leadership capacity and obtained significant recoveries on behalf of the respective classes include:

- *Cobalt Int'l Energy, Inc. Sec. Litig.*, 14-cv-3428 (NFA) (S.D. Tex.), in which Entwistle & Cappucci prosecuted federal securities law claims against oil and gas company Cobalt International Energy, Inc. and related defendants.  Entwistle & Cappucci served as co-lead counsel and recovered $169.35 million in cash, in addition to $220 million payable from director and officer liability policies that is currently being litigated on behalf of a class of investors;

- *San Antonio Fire & Police Pension Fund. v. Dole Food Co., Inc.*, No. 15-cv-1140 (D. Del.), in which Entwistle & Cappucci was appointed co-lead counsel in a securities class action brought on behalf of former investors in Dole Food Company, Inc.  The action alleged a fraudulent scheme to artificially depress the price of Dole's common stock and resulted in a $74 million settlement for the class of Dole investors.

- *In re MF Global Holdings Ltd. Inv. Litig.*, No. 1:12-md-02338-VM (S.D.N.Y.), in which Entwistle & Cappucci – appointed co-lead counsel for the worldwide class of commodities investors – worked with the trustee appointed under the Securities Investor Protection Act to recover all $1.6 billion in net equity lost by commodity customers after the collapse of MF Global;

- *In re: Royal Ahold NV Sec. Litig.*, No. 1:03-md-01539-CCB (D. Md.), in which Entwistle & Cappucci served as lead counsel representing the Public Employees' Retirement Association of Colorado as lead plaintiff, recovering a $1.1 billion settlement of the action, representing approximately 40% of estimated provable damages; and

- *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, No. 2:17-cv-04776-DOC-KES (C.D. Cal.), where Entwistle & Cappucci, as co-lead counsel on behalf of investors in derivative securities of Allergan, Inc., negotiated a $40 million settlement of claims that Valeant Pharmaceuticals International, Inc. and certain officers shared material non-public information with Pershing Square Capital Management, L.P. and certain affiliated individuals and entities concerning Valeant's plan to take over Allergan, Inc. in exchange for Pershing Square's support for the takeover.

Additionally, the Farnan firm has extensive experience representing plaintiffs in high-stakes patent, antitrust and securities cases. Farnan has been appointed liaison counsel in numerous matters and its extensive experience makes it a sensible selection for Liaison Counsel in this case. *See* Farnan Decl., Ex. G.

Thus, the Court may be assured that Saxena White, Entwistle & Cappucci and Farnan would provide the highest caliber of legal representation available to the Class. Accordingly, the EngageSmart Investors' selection of counsel should be approved.

## **CONCLUSION**

For the reasons stated herein, the EngageSmart Investors respectfully request that the Court: (1) appoint the EngageSmart Investors as Lead Plaintiff; (2) approve their selection of Saxena White and Entwistle & Cappucci as Lead Counsel for the Class and Farnan as Liaison Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

DATED: December 9, 2024                    Respectfully submitted,

**FARNAN LLP**

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Liaison Counsel for Proposed Lead Plaintiff the EngageSmart Investors and Proposed Liaison Counsel for the Class*

Vincent R. Cappucci (*pro hac vice* forthcoming)
Robert N. Cappucci (*pro hac vice* forthcoming)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Tel.: (212) 894-7200
Fax: (212) 894-7272
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

Thomas Curry (Bar No. 5877)
**SAXENA WHITE P.A.**
824 N. Market Street, Suite 1003
Wilmington, DE 19801
Tel.: (302) 485-0483
Fax: (888) 424-8566
tcurry@saxenawhite.com

David J. Schwartz (*pro hac vice* forthcoming)
Marco A. Dueñas (*pro hac vice* forthcoming)
**SAXENA WHITE P.A.**
10 Bank Street, Suite 882
White Plains, New York 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
dschwartz@saxenawhite.com
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the EngageSmart Investors and Proposed Lead Counsel for the Class*